EDDIE JOSEPH, Plaintiff and Respondent, *v.* HUSTAD CORPORATION, a Montana Corporation, Defendant and Appellant.

No. 11426.
Submitted April 18, 1969.
Decided May 19, 1969.
454 P.2d 916.

Luxan & Murfitt, Walter S. Murfitt (argued), Earl Hanson (appeared), Helena, for appellant.

C. W. Leaphart, Jr. (argued), Helena, for respondent.

MR. JUSTICE BONNER delivered the Opinion of the Court.

The respondent herein, Eddy Joseph, brought this action in the district court to recover damages for a breach of covenant of quiet enjoyment contained in a lease between himself and appellant herein, Hustad Corporation. The jury returned a verdict for the respondent Joseph and assessed damages in his favor in the sum of $18,500. From that award the appellant Hustad appeals.

September 25, 1964, Joseph and Hustad entered into a written lease whereby Joseph leased from Hustad for the period December 1, 1964, to November 30, 1974, a restaurant building 66 feet by 66 feet commonly known in Helena as Scheffi's Pancake House. Among other covenants Joseph agreed to use the building exclusively as a restaurant and the Hustad Corporation as lessor agreed that "Lessor shall at its own expense construct and maintain at all times during the terms of this lease a parking area on that portion of the premises on which the shopping center shall be erected, designated as 'Parking Area' on the plot plan hereto attached, marked 'Exhibit A'. Said parking area shall be for the joint use of all lessees of the Lessor of the premises situate within the area described in Exhibit 'B', and for the use of the customers, employees, visitors and invitees of said lessees for driveway, walking or parking purposes." While an exhibit B was missing. Defendant's exhibit 2 at the trial was introduced as missing exhibit B. Defendant's exhibit 2 is a plot of the Hustad Shopping Center as it exists on both sides of National Avenue.

The area in question is that land situate in the Hustad Shopping Center east of National Avenue, bounded on the north by Lyndale Avenue and on the south by Helena Avenue; more

specifically the large parking area which lies adjacent to the pancake house. At the time the lease was signed in September 1964, the parking area had on it a small building which housed a dry cleaning establishment.

Just after the lease in question here was signed, Hustad Corporation caused construction of the building now used as the pancake house, occupancy being had by Joseph on or about December 1, 1964. However, just prior to occupation by Joseph and on or about November 18, 1964, Hustad commenced construction of a building, which building is now used as a doctors' office, immediately north of the building housing the dry cleaners. Construction of the doctors' building was completed April 1965, and thereafter in May 1965, Hustad commenced construction of an office building immediately south of the dry cleaners which office building now houses a photography studio, an insurance underwriters association and a propane gas company.

No objection was made by Joseph to the Hustad Corporation to the construction of either building at the time construction commenced or during the course thereof even though Joseph had personal knowledge of what was being done. Mr. Joseph did testify he asked Wally Hustad, the brother of H. F. Hustad who is president of the Hustad Corporation, what was going on when construction commenced on the doctors' building. From the transcript it appears Wally Hustad was an independent contractor hired by the Hustad Corporation to construct the buildings, and was not an agent, officer or employee of the corporation.

Mr. Joseph further testified that other than the question put to Wally Hustad, who told him to speak to H. F. Hustad, he made no other objections to the construction of any building until March 1966, more than 16 months after he occupied the pancake house. Written notification of his objections as required by the lease was not made until April 22, 1966, through a letter from his attorney, James R. Paul.

In his complaint Joseph alleged that the parking lot situate on that portion of the Hustad Shopping Center east of National Avenue was designated to the exclusive use of himself and the dry cleaning establishment, that Hustad Corporation by building the two additional buildings deprived Joseph of the use and quiet possession of the parking facilities. He also charges that the pro rata parking facilities available to him during most business hours has been reduced from 42 spaces to 6, about which more will be said later.

The complaint prayed for damages for loss of future profits in the amount of $96,000 and for depreciation in the value of the leasehold interest in the amount of $20,,000. Testimony concerning Joseph's estimation of the present worth of the leasehold interest was stricken from the record by the trial court as too speculative. No other evidence was introduced as to present value of the leasehold and, thereafter, the jury awarded damages for loss of future profits.

As specifications of error numbers 5 and 6 the appellant Hustad contends the court below erred in refusing to grant its motions for non-suit and for directed verdict. We agree with that contention.

With regard to tort law it has been said:

"In general, the tort must be in the breach of a legal duty comprising three distinct elements, to-wit: (a) Existence of legal duty from defendant to plaintiff; (b) breach of that duty; and (c) the damage as a proximate result." Laclede Steel Co. v. Silas Mason Co., D.C., 67 F.Supp. 751, 759 (1946). See also Riggs v. Standard Oil Co., C.C., 130 F. 199; Standard Oil Co. v. Parrish, 7 Cir., 145 F. 829; Louisiana Oil Refining Corporation v. Reed, 5 Cir., 38 F.2d 159; Morris v. E. I. DuPont de Nemours & Co., 8 Cir., 68 F.2d 788.

The duty in question here was Hustad's promise under the lease to furnish parking facilities for all its lessees in its shopping center and, specifically, Mr. Joseph's pancake house. Mr. Joseph asserts Hustad breached that duty when it constructed

two additional buildings on the premises which allegedly decreased parking available to him; he also asserts loss of future profits as a proximate result of that breach.

It is admitted by both parties that one of the main considerations when constructing a shopping center is the availability of adequate parking and ease of access thereto. Shopping centers exist because of an abundance of parking area and ease of access from and to the same. Deny either parking or access thereto and they cease to exist as a viable entity. It is Joseph's contention that availability has been denied him and that Hustad Corporation should respond in damages.

Mr. Joseph testified that before he signed the lease he roughly estimated that there was a total of 46 or 47 parking spaces available on the lot. He also testified that even with the dry cleaning establishment there he assumed he would have 41 or 42 available for his own use. In his complaint he asserts that additional construction has diminished his share of the total number of spaces available and contends that he is now limited to a pro rata share of 6 of his original 42.

His conclusion and assertion in the complaint that he is entitled to a pro rata share of the total parking available is not in accord with studies concerning shopping centers. The usual business understanding with regard to parking in shopping centers is that every lessee is equally entitled to the use of all the parking, or at least entitled to as much parking as his customers in his peak hours of business wish to occupy. The procedure is to secure lessees who peak hours vary so that continuous optimum use is made of the parking available without overloading at any one hour. On that basis the respondent or any other lessee is not entitled to any specific pro rata share of the parking available, but must share the total with all other lessees.

While respondent's complaint alleges a total of 6 spaces available to him with a total of 46 or 47 spaces available for all lessees, other evidence shows that there are 52 parking

spaces available in the parking area between the front of his building and Helena Avenue, with an additional 8 spaces in front of the propane and insurance company offices. So there are at least 60 off street spaces still available while respondent testified he assumed there were never, even before the additional construction, more than 46 or 47 spaces on the entire lot. In essence there are more lots *now* available for parking even with the additional construction than Joseph ever assumed there were.

In addition all of the times all witnesses at the trial testified that the parking lot was full totals less than 12 during the 34 month period from December 1, 1964 to October 10, 1967. The lot has been filled less than once every two and one-half months. Moreover, only once was it shown that the parking area was filled with patrons of someone other than Scheffi's. Mr. Buller, manager of Scheffi's at the time of trial, testified that on one occasion he arrived at Scheffi's to find the lot filled and upon entering the restaurant only three tables were occupied by customers.

In the early case of Fisher v. Butte Electric Ry. Co., 72 Mont. 594, 602, 235 P. 330, 332 (1925) we established the rule that:

"To sustain a recovery, the evidence relied upon whether direct or indirect, must be substantial—more than a mere scintilla. Escallier v. Great Northern Ry. Co., 46 Mont. 238, 127 P. 458, Ann.Cas. 1914B, 468, McIntyre v. Northern Pac. Ry. Co., 58 Mont. 256, 191 P. 1065. A verdict cannot rest upon conjecture, however shrewd, nor upon suspicion, however well grounded."

In this same vein we held in Morton v. Mooney, 97 Mont. 1, 11, 33 P.2d 262, 265 (1934):

"It is true that where the record presents a conflict in the evidence, resolved by the jury in favor of the plaintiff, the action of the jury precludes this court from disturbing the verdict (citing cases) but this is true only when there is substantial evidence in the record to support the verdict and judg-

ment. (citing cases) Substantial evidence is such as will convince reasonable men and one which such men may not reasonably differ as to whether it establishes the plaintiff's case, and, if all reasonable men must conclude that the evidence does not establish such case, then it is not substantial evidence." (citing cases)

R.C.M.1947, section 93-301-4 provides: "The law does not require demonstration; that is, such a degree of proof as, excluding possibility of error, produces absolute certainty, because such proof is rarely possible. Moral certainty is only required, or that degree of proof which produces conviction in an unprejudiced mind."

Also R.C.M.1947, section 93-301-13 provides: "The evidence is deemed satisfactory which ordinarily produces moral certainty or conviction in an unprejudiced mind. Such evidence alone will justify a verdict. Evidence less than this is denominated slight evidence."

We have said that inherently weak evidence may still be deemed substantial. Batchoff v. Craney, 119 Mont. 157, 172 P.2d 308; Campeau v. Lewis, 144 Mont. 543, 398 P.2d 960. However, in the instant case we believe that there isn't even any weak evidence supporting Joseph's contention that he has been deprived of any parking area. The only testimony to prove Joseph's allegations is that one time the lot was filled but only three tables were in use in the restaurant itself. There is no showing whose customers had filled the lot the other times it was full; certainly if they were customers of Scheffi's, then Mr. Joseph has no complaint. We do not feel that testimony that the lot was full once and Scheffi's customers were not the ones occupying it can be termed substantial evidence tending to prove Joseph's cause of action.

Viewing all the evidence in the light most favorable to Mr. Joseph and giving him the benefit of all favorable inferences to be drawn therefrom, we think Joseph has failed to raise more than mere conjecture or speculation that Hustad Corpora-

tion failed to furnish parking areas. Mere surmise or conjecture, as noted above, is insufficient to establish a cause of action.

Since Joseph has failed to show a breach of the duty to furnish parking we do not feel constrained to burden this record with the remaining specifications of error of Hustad Corporation and therefore the judgment below is reversed and the case dismissed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES HASWELL and CASTLES, concur.

MR. JUSTICE JOHN C. HARRISON, (dissenting):
I dissent.