[No. 411-2. Division Two. March 22, 1972.]

JEAN WALTERS GAY, *Respondent and Cross-appellant*, v. JOHN R. CORNWALL *et al.*, *Respondents*, ELMO CECIL WILLOUGHBY *et al.*, *Appellants*.

*Warren F. Andrews*, for appellant.

*James M. Stewart* and *Ralph I. Thomas* (of *Stewart & Thomas, Inc., P.S.*), for respondent and cross-appellant.

*Lester Stritmatter*, for respondent.

PETRIE, C.J.—The basic issue presented by this appeal is whether or not an implied warranty of fitness flows from the builder of a new house to the first purchaser-occupant where the premises have been sold by the owner prior to completion. We hold that it does.

The house in question was built by the defendant, Elmo C. Willoughby, in the city of Montesano on a lot owned by a party named Childs. Willoughby originally agreed to build for Childs, but after construction had begun Childs

sold the property to Mr. and Mrs. John R. Cornwall, also named as defendants here. The plaintiff, Jean Walters Gay, purchased from the Cornwalls before the house was completed, and she was the first to occupy it.

It was not until after she moved in that Mrs. Gay began to discover the defects in the house. Perhaps the most serious defect was the roof. It developed so many leaks that 100 tin shingles were required to repair it temporarily. The many leaks had, in the meantime, caused staining and other damage in many rooms of the house. Because the chimney had been improperly flashed, serious leaks developed in the area of the fireplace and water collected on the mantle. Water leaked into and ran across the main electrical control panel for the house, causing electrical problems. The plumbing was defective in materials and installation and will, along with the roof, require major repairs. Vents were not connected between the attic and the roof, permitting pipes to vent into the attic and permitting rain to enter through the openings in the roof. The sewer pipe beneath the house broke and accordingly, raw sewage was dumped into the crawl space. Mrs. Gay also had problems with the furnace. It overheated and had to be operated manually. She feared the overheating was a fire danger and had to turn off the furnace whenever she left the house. The fan motor burned out and had to be replaced and finally the whole furnace was replaced. On the outside of the house, gutters were too short and water from the roof drained into the yard. A new drainfield for the driveway had to be constructed when the inadequate drainfield installed by Willoughby washed away. The external paint was too thin and the house required repainting.

Mrs. Gay brought this action naming both the builder, Willoughby, and the Cornwalls, from whom she had purchased the property, as defendants. The trial court dismissed the Cornwalls from the action and entered judgment against the defendant Willoughby for $2,000, which was determined to be the cost of remedying the defects. The trial court held (1) there was an implied warranty

running from the builder to plaintiff that the dwelling would be fit for its intended purpose and (2) Willoughby had breached the warranty because there were so many defects in the house that it was not habitable without extensive repairs. The court further concluded that privity of contract between defendant Willoughby and the plaintiff was not necessary and that the Cornwalls, having complied with the earnest money agreement executed with plaintiff, should not be held liable for the damages when the defects were found to have been hidden from them as well as from plaintiff.

On appeal, defendant Willoughby raises the contention that recovery on an implied warranty theory was improper in the absence of privity between himself and Mrs. Gay. It does not appear from the record that Mrs. Gay had any express agreement with Willoughby with regard to construction of the house. She purchased the house from the Cornwalls while it was in the course of construction. Apparently the Cornwalls purchased the house at the suggestion of Willoughby, intending to occupy it temporarily while their permanent residence was being readied. The Cornwalls had purchased Childs' equity and had assumed his mortgage. There appears from the record to have been a written agreement between Childs and Willoughby, but it is unclear what arrangement the Cornwalls had with Willoughby. There is some indication, though, that certain minor structural changes had been agreed upon between Willoughby and the Cornwalls.

■ We hold that in the instant situation, privity between plaintiff and defendant builder is not a prerequisite to imposing liability on a builder whose completed product is unfit for the purpose contemplated by the parties. It is now well established in this jurisdiction that when dealing with brand-new housing, the doctrine of caveat emptor has given way to the concept of strict liability for defects in the structure which make it unfit for its intended purpose. *House v. Thornton,* 76 Wn.2d 428, 457 P.2d 199 (1969). The

rationale for the rule was explained by the court as follows at page 435:

> To borrow an idea from equity, of the innocent parties who suffered, it was the builder-vendor who made the harm possible. If there is a comparative standard of innocence, as well as of culpability, the defendants who built and sold the house were less innocent and more culpable than the wholly innocent and unsuspecting buyer. Thus, the old rule of caveat emptor has little relevance to the sale of a brand-new house by a vendor-builder to a first buyer for purposes of occupancy.
>
> We apprehend it to be the rule that, when a vendor-builder sells a new house to its first intended occupant, he impliedly warrants that the foundations supporting it are firm and secure and that the house is structurally safe for the buyer's intended purpose of living in it.

There is no dispute that Mrs. Gay, the plaintiff, was the first to occupy the premises, and, though she was not its first purchaser, she was, nevertheless, the first purchaser-occupant of the house. The defects in the house found to render it uninhabitable were determined by the trial court to have been hidden to both plaintiff and the Cornwalls and not discovered by plaintiff until after she had taken possession of the dwelling. We are, therefore, of the opinion that the trial court was correct in imposing liability on defendant Willoughby without regard to privity. As between the two, the builder, rather than the first purchaser-occupant of a new house, should suffer the loss when the structure as completed has so many defects it is not reasonably fit for human habitation.

Two additional contentions are raised by defendant Willoughby, the first dealing with the sufficiency of the findings and the second with the sufficiency of the evidence to support the findings.

 Defendant directs our attention to the fact that there is no finding as to the amount of damages, the cost of repairs, or the reasonableness of the damages awarded. It is his contention that without a finding on damages there has not been a finding of fact on all material issues in the case

as required in *Mayes v. Emery,* 3 Wn. App. 315, 475 P.2d 124 (1970). Although the trial court did not make a specific finding as to damages, it did, in its conclusions of law, specify the damages to be $2,000. Though labeled a conclusion of law, it is in the nature of a finding of fact and may be treated as such. *Ferree v. Doric Co.,* 62 Wn.2d 561, 383 P.2d 900 (1963); *Baltzelle v. Doces Sixth Ave., Inc.,* 5 Wn. App. 771, 490 P.2d 1331 (1971). It is evident from the court's oral opinion that it considered and made a determination on the nature of the defects in the house, the reasonableness of the cost of their correction and the amount by which plaintiff was damaged by defendant's breach of warranty. Where a trial court has not made an express finding of material fact, an appellate court may look to the trial court's oral opinion and, if consistent with the written findings, hold that the trial court determined the issue. *Stevens v. Stevens,* 4 Wn. App. 79, 480 P.2d 238 (1971). In our opinion, the trial court took into account all issues of material fact in rendering judgment against defendant Willoughby. Furthermore, we find substantial evidence in the record to support all of the trial court's findings, including the determination that the dwelling had so many defects that it was not habitable without extensive repairs.

Judgment is affirmed.

PEARSON and ARMSTRONG, JJ., concur.