498 P.2d 1179 (1972)
Patrick Francis WRIGHT, a minor by and through his father and next friend, Francis E. Wright, and Francis E. Wright, Plaintiffs-Appellants,
v.
CREATIVE CORPORATION, a Colorado corporation, d/b/a Hallmark Homes Incorporated, and Milton Taylor, d/b/a Perma Construction Company, Defendants-Appellees.
No. 70-694.
Colorado Court of Appeals, Div. II.
April 25, 1972.
Rehearing Denied June 6, 1972.
*1180 Williams, Trine & Greenstein, P.C., William A. Trine, Joel H. Greenstein, David W. Griffith, Boulder, for plaintiffs-appellants.
Yegge, Hall & Evans, C. Willing Browne, Denver, for defendant-appellee, Creative Corp., a Colorado corporation, d/b/a Hallmark Homes, Inc.
Darrell J. Skelton, Dale E. Miller, Wheatridge, for defendant-appellee Taylor, d/b/a Perma Construction Co.
Selected for Official Publication.
SMITH, Judge.
The defendant, Creative Corporation, doing business as Hallmark Homes, built a home in which it installed a sliding glass door containing clear plate glass. Some time later, in April 1966, the other defendant, Milton Taylor, doing business as Perma Construction Company, remodeled the home built by Creative. Directed by the owners of the house to add another room, Taylor relocated the sliding glass door containing the original glass installed by Creative. The plaintiff, Francis E. Wright, purchased the home in May 1969, from the original owners and occupied it immediately. On July 6, 1969, the minor plaintiff, then five years old, ran into the glass door which shattered into pieces. The minor plaintiff was cut by the broken pieces of glass. Plaintiffs' complaint in the district court, upon defendants' motion filed prior to the answer, was dismissed for failure of the complaint to state a claim upon which relief could be granted. Plaintiffs appeal from this ruling. We reverse in part.
Plaintiffs alleged in their first and third claims for relief that the defendants were negligent in failing to install tempered safety glass in the door and in not marking the door to dispel the illusion of openness which the glass created. Plaintiffs further alleged that the minor plaintiff suffered damages as a direct and proximate result of such negligence. Proof of negligence requires that "there must be a duty imposed by law and breached by defendant with resultant damages . . . ." Roessler v. O'Brien, 119 Colo. 222, 201 P.2d 901. The question is therefore framed: Was there a duty on the part of either defendant toward the plaintiff? The finding of such a duty requires application of the established doctrine of MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, to include acts of a builder or remodeler of a structure on real property.
Justice Cardozo's opinion in MacPherson emphasized that tort liability may attach irrespective of contractual relationship. Hence the duty necessary to support a finding of negligence may be shown without regard for the antiquated concept of privity. In Justice Cardozo's words:
"If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then, irrespective of contract, the manufacturer of this thing of danger is under a duty to make it carefully . . . . There must be a knowledge of a danger, not merely possible, but probable. It is possible to use almost anything in a way that will make it dangerous if defective. That is not enough to charge the manufacturer with a duty independent of his contract . . . but, it is possible that even knowledge of the danger and of the use will not always be enough. The proximity or remoteness of the relation is a factor to be considered. We are *1181 dealing now with the liability of the manufacturer of the finished product, who puts it on the market to be used without inspection by his customers. If he is negligent, where danger is to be foreseen, a liability will follow . . . . We have put aside the notion that the duty to safeguard life and limb, when the consequences of negligence may be foreseen, grows out of contract and nothing else. We have put its source in the law."
Colorado cases demonstrate an acceptance of the MacPherson view of tort duty with no express limitation that such duty is imposed only on manufacturers of chattels. The Colorado Supreme Court has held that, in matters of negligence, liability attaches to a wrongdoer, not because of a breach of a contractual relationship, but because of a breach of duty which results in an injury to others. Lembke Plumbing and Heating v. Hayutin, 148 Colo. 334, 366 P.2d 673. In another case, where a family was injured and one child killed as a result of carbon monoxide poisoning caused by a defective furnace and heating system, our Supreme Court allowed a recovery against Public Service Company for negligence in inspecting the heating system even though all Public Service Company inspections had been made at the request of and during the residency of a previous owner of the house. DeCaire v. Public Service Co., Colo., 479 P.2d 964. This case held that since it could be anticipated that someone else might be occupying the premises in the future, and since the unsafe condition remained, there was no reason to limit the tort liability of the company to the parties requesting the inspection. The concept of tort duty therefore is not restricted by that of contractual privity, but is there a need to limit this concept to manufacturers of chattels?
The courts that have not accepted the MacPherson view of tort duty as to structures upon real estate generally have held that the liability of a contractor should be premised upon the early common law rule as stated in Ford v. Sturgis, 56 App.D.C. 361, 14 F.2d 253: "the negligence of a contractor in constructing a building will not render him liable to a third person, who is injured in consequence thereof after the work has been completed and accepted by the owner of the building." Aside from the technical requirement of privity, the reason given for such a rule is that there would be endless liability for the contractor or builder if liability did not cease with acceptance of the work. It is argued that the nature of most structures on real estate is so complicated that defects would be attributed to the contractor which were actually the result of the owner's negligence or of other extraneous factors such as the weather.
This reasoning is not persuasive, and we can see no purpose in distinguishing between chattels and structures on real property when applying the MacPherson view of tort duty. Hanna v. Fletcher, 97 U.S.App.D.C 310, 231 F.2d 469, expressly overruled Ford v. Sturgis, supra. The court in Hanna rejected the privity argument and adopted the reasoning in MacPherson that the duty upon which a negligence action is based does not depend on the existence of a contractual duty. Concerning the fears of unlimited liability for contractors and builders the court stated:
"As to the concern that there would be no end of suits if the contractor might be held liable, there would seem to be all the ends which the law should require. Negligence must be proved. It must be proved to be the proximate cause of the injury. Contributory negligence is a defense. The plaintiff must be within the class protected, that is, one as to whom `the consequence of negligence may be foreseen.' Liability exists only upon a reasonable basis consistent with rules properly applicable in tort litigation."
By applying the MacPherson doctrine to the building of structures on real property, we hold that where the completed work is reasonably certain to endanger third persons if negligently constructed, a contractor or builder of real property is liable for *1182 injuries or death of third persons occurring after the completion of the work and after its acceptance by the owner.
Therefore, we conclude that the first and third claims for relief alleging Creative's negligence and Taylor's negligence respectively, state causes of action for which relief may be granted. Hence, the district court erred in granting defendants' motion to dismiss under C.R.C.P. 12 (b) (5). The first claim for relief alleges that Creative's installation of plate glass instead of safety glass was a defect in the building of the house which was reasonably certain to endanger third persons. Although the third claim for relief fails to state that Taylor knew or should have known of the nature of the glass in the door and thus fails to establish a duty between Taylor and the plaintiffs in that regard, it does allege that Taylor was negligent in removing and placing the door in such a position that an illusion of space was created and that Taylor did not mark the glass to dispel this illusion. These claims are both sufficient statements of a cause of action for which relief may be granted.
Plaintiffs' second and fourth claims for relief assert that the defendants are liable on an implied warranty theory. An implied warranty of the type plaintiffs advocate has been expressly recognized by the Colorado Supreme Court. This implied warranty of merchantability of the builder-vendor of a newly-constructed building has been held to include compliance with the building code and construction of the home in a workmanlike manner so that it will be suitable for habitation. Carpenter v. Donohoe, 154 Colo. 78, 388 P.2d 399. However, in H. B. Bolas Enterprises, Inc. v. Zarlengo, 156 Colo. 530, 400 P.2d 447, the court held such a warranty to apply only to a purchaser from the builder-vendor of a home. In light of this decision, plaintiff cannot establish a cause of action against either defendant on a warranty basis.
Finally, the plaintiffs contend that the facts as stated in the complaint support a cause of action in strict liability. Plaintiffs rely on Schipper v. Levitt & Sons, Inc., 44 N.J. 70, 207 A.2d 314, which applied not only the MacPherson theory of tort duty, but also a strict liability theory of recovery. In so doing, the court in Schipper relied on an enterprise liability concept, finding that a mass producer of homes should bear the loss even in the absence of negligence where that loss was caused by a defect created in the building of the home. Even if we assume that Creative was a mass producer of homes, this court would be remiss in its responsibilities if it did not closely consider the need for awarding damages without requiring a specific showing of negligence on the part of the mass producer.
An investigation of the purpose imposing a strict liability rule based on an enterprise liability theory has convinced us that such a rule should not be applied in the present case. See Conolley v. Bull, 258 Cal.App.2d 183, 65 Cal.Rptr. 689, Justice Traynor in Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, concisely states the reasoning behind this theory of strict liability:
"The purpose of such [strict] liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves. Sales warranties serve this purpose fitfully at best."
As this passage indicates, the predominant problem with effectuating recovery for injuries caused by a chattel is the difficulty of finding the negligent party and effecting a recovery from that party. Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099 at 1116. There are important differences between strict liability as applied to manufactured products and as applied to building construction situations. A builder cannot easily limit his liability by express warranties and disclaimers, and it is easier to trace a defect to a builder than to a manufacturer *1183 as there is more opportunity to make a meaningful inspection of a structure on real property. Halliday v. Greene, 244 Cal.App.2d 482, 53 Cal.Rptr. 267. In this case, the negligence has been clearly defined by the complaint, and there is no problem of identifying the builder as the one responsible for the alleged act of negligence.
We reverse as to the first and third claims for relief as indicated, but affirm the holding of the district court as to the second and fourth claims for relief.
COYTE and PIERCE, JJ., concur.