371 S.E.2d 82

**Arthur L. and Irma J. SEWELL**

v.

**Paul G. GREGORY, Sr.**

**No. 17699.**

Supreme Court of Appeals of West Virginia.

July 1, 1988.

Dissenting Opinion July 29, 1988.

Guy R. Bucci, Charleston, Deborah Henry, Morgantown, Lucien G. Lewin, Martinsburg, for Sewell.

Wm. R. McCune, Jr., Clarence Martin, III, Martinsburg, for Gregory.

Richard L. Douglas, Martinsburg, for Toup & Ways.

McGRAW, Justice:

This is an appeal from an order by the Circuit Court of Berkeley County dismissing certain claims of Arthur L. and Irma J. Sewell, Appellants, against Appellee Paul G. Gregory, Sr., both individually and in his various business capacities.

In 1975, the Appellee built a three bedroom house in his Forest Hills subdivision, located near Martinsburg, and sold the house to William L. and Beverly K. Toup.[1] When the Toups sold the house some three and one-half years later to the Appellants, the Appellee acted as the real estate agent. In June of 1979, two months after the Appellants moved into their new home, heavy rains caused flooding throughout much of the house, resulting in significant damage. The Appellants made various ef-

---

1. Beverly Toup has since remarried and is now Beverly Ways.

forts to correct the flooding problem, but contend they did not work because of how and where the house was constructed.

The Appellants filed suit on December 21, 1983, among other things, complaining that the Appellee negligently designed and constructed the house, that he was strictly liable for selling the house in a defective condition, and that he breached the warranty of habitability and fitness for use as a family residence. The circuit court dismissed these counts whereby the Appellants sued the Appellee directly, noting the lack of privity of contract.[2]

## I.

■ Two of the Appellant's claims against the Appellee are based in the tort theories of negligence and strict liability. In West Virginia, tort actions must be brought within a maximum of two years of the time they accrue. W.Va.Code § 55–2–12 (1981 Replacement Vol.). The circuit court was correct in stating that the two year statute of limitation for a tort action arising from latent defects in the construction of a house begins to run when the injured parties knew, or by the exercise of reasonable diligence should have known, of the nature of their injury and its sources, and determining that point in time is a question of fact to be answered by the jury. *See* Syl. Pt. 1, *Hickman v. Grover,* 178 W.Va. 249, 358 S.E.2d 810 (1987); *see also Pauley v. Combustion Engineering, Inc.,* 528 F.Supp. 759 (S.D.W.Va.1981). The flooding involved in this case occurred in June 1979, and the Appellants filed their suit in December 1983, some four and one-half years later. The Appellants contend, however, that they did not discover the defective nature of the construction until after their attempts at correcting the problem failed, a date not entirely apparent from the record. Assuming that date to be less than two years before the suit was filed, it is up to the jury to determine when the Appellants discovered the defect and if the tort claims are barred by the statute of limitation.

■ We assume, although it is difficult to ascertain with certainty from the order, that the circuit court intended to dismiss the Appellants' two tort claims because of lack of privity. The concept of privity is one associated with claims under contract theories and is not generally required in tort actions. *Hawthorne v. Kober Construction Co.,* 196 Mont. 519, 640 P.2d 467 (1982); J. Lee and B. Lindahl, *Modern Tort Law* § 2.05 (Revised Ed. 1977–88); *see* W. Prosser, *Handbook on the Law of Torts* § 93, at 667–68 (5th ed. 1984). From the earliest days of law school, prospective attorneys are taught that the three elements of every tort action are the existence of a legal duty, the breach of that duty, and damage as a proximate result. *Joseph v. Hustad Corp.* 153 Mont. 121, 454 P.2d 916, 918 (1969). "[I]n matters of negligence, liability attaches to a wrongdoer, not because of a breach of a contractual relationship, but because of a breach of duty which results in an injury to others." *Wright v. Creative Corp.,* 30 Colo.App. 575, 578, 498 P.2d 1179, 1181 (1972). Thus, the concept of privity is not relevant to the instant tort claims.

Most courts which have considered the issue have encountered no difficulty in recognizing the existence of a negligence cause of action against a contractor/builder by a subsequent purchaser. *Wright,* 30 Colo.App. 575, 498 P.2d 1179; *Coburn v. Lenox Homes,* 173 Conn. 567, 378 A.2d 599 (1977); *Parliment Towers Condominium v. Parliment House Realty, Inc.,* 377 So.2d 976 (Fla.App.1979); *McDonough v. Whalen,* 365 Mass. 506, 313 N.E.2d 435 (1974); *Arnold v. New City Condominiums Corp.,* 78 App.Div.2d 882, 433 N.Y.S.2d 196 (1980); *Terlinde v. Neely,* 275 S.C. 395, 271 S.E.2d 768 (1980); *Brown v. Fowler,* 279 N.W.2d 907 (S.D.1979); *Moxley v. Laramie Builders, Inc.,* 600 P.2d 733 (Wyo.1979). The states which have rejected the negli-

2. The circuit court declined to rule on the claims made against Toup and Ways, on whether the tort claims should be dismissed because of the expiration of the statute of limitations, and on the issue of the Appellee's independent liability for actions taken as the real estate agent for sale of the house.

gence claims of subsequent purchasers, e.g. *Nastri v. Wood Brothers Homes, Inc.*, 142 Ariz. 439, 690 P.2d 158 (App.1984); *Redarowicz v. Ohlendorf,* 92 Ill.2d 171, 441 N.E.2d 324 (1982); *Crowder v. Vandend- eale,* 564 S.W.2d 879 (Mo.1978); *see Ellis v. Morris,* 128 N.H. 358, 513 A.2d 951 (1986), have done so primarily because their case law prevents recovery for "economic loss" in tort actions, which damages we specifi- cally allowed in *Star Furniture Co. v. Pulaski Furniture Co.,* 171 W.Va. 79, 297 S.E.2d 854 (1982).

■ The courts which have allowed neg- ligence actions have done so because it is entirely foreseeable that there will be sub- sequent owners of the houses built.

> Liability will be imposed, however, only if it is foreseeable that the contrac- tor's work, if negligently done, may cause damage to the property or injury to persons living on or using the premis- es.

> .  .  .  .  .

> The ultimate test of the existence of a duty to use care is found in the foresee- ability that harm may result if it is not exercised.... The test is, would the or- dinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the gen- eral nature of that suffered was likely to result?

*Coburn,* 173 Conn. at 575–76, 378 A.2d at 602–03 (citations omitted). The Appellee foresaw that there would be subsequent purchasers when he constructed the house in question. Indeed, he took economic ad- vantage of that eventuality by acting as the real estate agent in the sale to the Appellants.

We agree with the Colorado Court of Appeals that a builder "is under a common law duty to exercise reasonable care and skill in the construction of a building ... [and a] subsequent homeowner can 'main- tain an action against a builder for negli- gence resulting in latent defects which the subsequent purchaser was unable to dis- cover prior to purchase.' " *Johnson v. Graham,* 679 P.2d 1090 (Colo.App.1983), *reversed on other grounds, Tri–Aspen Construction Co. v. Johnson,* 714 P.2d 484 (Colo.1986). The Appellants may present their evidence of negligence against the Appellee as the builder of the house.[3]

## II.

The remaining claim by the Appellant is based on an asserted breach of an implied warranty of habitability and fitness for use of the premises as a family home.[4] In Syllabus Point 1 of *Gamble v. Main,* 171 W.Va. 469, 300 S.E.2d 110 (1983), we recog- nized such an implied warranty of habita- bility or fitness for new homes. The ques- tion before us now is whether to expand that implied warrant to used homes and subsequent purchasers.

In recognizing an implied warranty for new homes, we joined the majority of juris- dictions. Annotation, *Liability of Build- er–Vendor or Other Vendor of New Dwelling for Loss, Injury, or Damage Oc- casioned by Defective Condition Thereof,* 25 A.L.R.3d 383 (1969 and Supp.1986); *see Gamble,* 171 W.Va. 469, at 472, 300 S.E.2d at 114. In *Gamble,* we rejected the doc- trine of *caveat emptor* and agreed with the New Jersey Supreme Court that (1) the purchase of a home is often the most im- portant transaction of a lifetime, (2) buyers do not generally have the skills necessary to adequately inspect the house or detect

---

**3.** The Appellants have stated a specific claim for negligence in their complaint, contending that the Appellee was negligent in designing and constructing the home below the waterline, proximately resulting in their damages. "The cause of action covered by the term 'strict liabil- ity' is designed to relieve the plaintiff from proving that the manufacturer was negligent in some particular fashion...." *Morningstar v. Black and Decker Manufacturing Co.,* 162 W.Va. 857, 878, 253 S.E.2d 666, 677 (1979). Because the Appellants have clearly defined a negligence

cause of action, we do not need to reach the possibility of maintaining an action for strict liability in tort in the instant case. *See Wright* 30 Colo.App. at 583, 498 P.2d at 1182–83.

**4.** The Appellants, of course, would not be enti- tled to recover twice for the same damages, but may assert available alternate theories of liabili- ty. *See* W.Va.R.Civ.P. 8, 13, 18; *Johnson v. Graham,* 679 P.2d 1090.

defects, and (3) the builder is in a superior position to prevent problems. *Gamble,* 171 W.Va. 472, 300 S.E.2d 113–14 (citing *McDonald v. Mianecki,* 79 N.J. 275, 287–89, 398 A.2d 1283, 1289–90 (1979)). All of these reasons apply with equal strength to used homes.

■ A distinction between purchasers of a new home and subsequent purchasers, however, is that the original buyer is in privity with the builder/vendor. The existence of privity "was traditionally essential to the maintenance of an action on any contract...." *Black's Law Dictionary* 1079 (5th ed. 1979). The traditional view, however, has been abandoned in this state and lack of privity is no longer a barrier in matters of implied warranty. As we said well over a decade ago, "[t]he requirement of privity of contract in an action for breach of an express or implied warranty in West Virginia is hereby abolished." Syllabus, *Dawson v. Canteen Corp.,* 158 W.Va. 516, 212 S.E.2d 82 (1975).

Without the privity barrier, we see no sound reason not to extend the implied warranties recognized in *Gamble* to subsequent purchasers. We agree with the Supreme Court of Wyoming that:

> [t]he purpose of a warranty is to protect innocent purchasers and hold builders accountable for their work. With that object in mind, any reasoning which would arbitrarily interpose a first buyer as an obstruction to someone equally as deserving of recovery is incomprehensible.... No reason has been presented to us whereby the original owner should have the benefits of an implied warranty or a recovery on a negligence theory and the next owner should not simply because there has been a transfer. Such intervening sales, standing by themselves, should not, by any standard of reasonableness, effect an end to an implied warranty or, in that matter, a right of recovery on any other ground, upon manifestation of a defect. The builder always has available the defense that the defects are not attributable to him.

*Moxley,* 600 P.2d at 736.

■ We hold that implied warranties of habitability and fitness for use as a family home may be extended to second and subsequent purchasers for a reasonable length of time after construction, but such warranties are limited to latent defects which are not discoverable by the subsequent purchasers through reasonable inspection and which become manifest only after purchase. In so holding, we become part of a growing number of jurisdictions which have extended implied warranties to subsequent home purchasers. *Richards v. Powercraft Homes, Inc.,* 139 Ariz. 242, 678 P.2d 427 (1984); *Briarcliffe West Townhouse Owners Assn. v. Wiseman Construction Co.,* 118 Ill.App.3d 163, 454 N.E.2d 363 (1983); *Barnes v. Mac Brown & Co.,* 264 Ind. 227, 342 N.E.2d 619 (1976); *Hermes v. Staiano,* 181 N.J.Super. 424, 437 A.2d 925 (1981); *Bridges v. Ferrell,* 685 P.2d 409 (Okla.Ct.App.1984); *Terlinde,* 275 S.C. 395, 271 S.E.2d 768; *Gupta v. Ritter Homes, Inc.,* 646 S.W.2d 168 (Tex. 1983); *Moxley,* 600 P.2d 733; *see Gay v. Cornwall,* 6 Wash.App. 595, 494 P.2d 1371 (1972).

### III.

The Appellants may put on their proof; it is up to the jury to determine the reasonableness of their claims. The Appellee may, of course, interpose such defenses as are available under our law. The decision of the Circuit Court of Berkeley County dismissing the Appellants' claims is reversed and the case is remanded for trial.

Reversed and Remanded.

NEELY, Justice dissenting:

The majority has today both expanded a builder's liability for defects in the construction of a house far beyond its traditional limits and limited the freedom of parties to contract for what they want and do not want in the construction of a house. The majority has held that plaintiffs have stated a proper cause of action against defendant builder for both negligence and breach of an implied warranty of habitability.

**590**

It is true, as the majority states, that in *Gamble v. Main*, 171 W.Va. 469, 300 S.E.2d 110 (1983), we recognized that a builder-vendor is charged with an implied warranty of habitability for new houses. However, the majority is mistaken on both principle and policy in extending the implied warranty to used houses. A claim based on an implied warranty sounds in contract and is, therefore, subject to contract defenses, such as lack of privity. The majority states that privity of contract is no longer required to sustain an action based on implied warranty, citing our decision in *Dawson v. Canteen Corp.*, 158 W.Va. 516, 212 S.E.2d 82 (1975).

In *Dawson*, the plaintiff suffered food poisoning when he purchased and consumed a cheeseburger from a vending machine. He sued the vending machine company and the company which baked the defective bun; both companies filed successful motions to dismiss for lack of privity. Plaintiff appealed the dismissal of the baking company and we reversed, holding that lack of privity did not bar plaintiff from seeking relief against the company. We pointed out that because West Virginia was virtually alone amongst the states in requiring privity of contract for recovery for injuries from defective products, West Virginia plaintiffs were being denied the relief granted to plaintiffs from other states against products manufactured by West Virginia companies. After discussing the provisions of the *UCC*, which effectively abolished the requirement of privity for a breach of implied warranties in the sale of goods, we said:

"It appears to this Court that it is not only the clear trend of the common law as articulated in other jurisdictions, but also the trend of modern legislation in West Virginia to recognize the problems inherent in complex, modern commerce concerning mass production, mass distribution, and mass demand generated through nation-wide advertising, and therefore, to provide functional rather than arbitrary rules for recovery in warranty."

158 W.Va. 520, 212 S.E.2d 82.

Clearly, the majority has misconstrued our decision in *Dawson*, which was restricted to goods which are mass produced and mass distributed.

In *Coburn v. Lenox Homes, Inc.*, 173 Conn. 567, 378 A.2d 599 (1977), relied on extensively by the majority, the Supreme Court of Connecticut recognized this distinction between mass-marketed goods and houses and held that lack of privity of contract bars a suit against the builder by a subsequent purchaser based on an implied warranty.[1]

"Similar justification does not exist for the destruction of the privity requirement in the case at hand. This is not a mass marketing situation in which the defendant has attempted to insulate itself from liability behind a wall of intermediaries. Rather, the defendant contracted directly with the original purchaser and constructed the house for and sold it to the original purchaser, who subsequently sold it to the plaintiffs. A house which is not the product of a mass marketing scheme or which is not designed as a temporary dwelling differs from the usual item to which the principles of strict liability have generally been applied."

378 A.2d at 601.

The majority has held that "...implied warranties of habitability and fitness for use as a family home may be extended to second and subsequent purchasers for a *reasonable length of time after construction* ..." (emphasis supplied). The majority does not provide any guidelines for deciding what is "a reasonable length of time." Presumably, after the barrage of litigation this decision will encourage, the majority will at some time in the future define the limits of a "reasonable time."

The majority also states that by extending the implied warranty to subsequent purchasers, "...we become part of a growing number of jurisdictions ..." which

1. The Court in that case did allow the subsequent purchaser's suit against builder based on negligence.

have done so. Although some states have extended the implied warranty to subsequent purchasers,[2] an equal number, including the Supreme Court of Connecticut in *Coburn,* the case cited by the majority, have refused to do so.[3]

By extending the implied warranty of habitability to subsequent purchasers, the majority has limited the freedom of initial purchasers to contract with builder-vendors. As Justice Rovira of the Supreme Court of Colorado pointed out in his dissent in *Cosmopolitan Homes, Inc. v. Weller,* 663 P.2d 1041 (1983):

> There seems to be no sound policy reason to put such limitations on the parties' ability to allocate risk. An original purchaser may be willing to accept the tradeoff of a poorer quality house for a lower purchase price. It is a questionable policy that would allow the specter of a claim by a subsequent purchaser to prevent that choice.

663 P.2d at 1048.

To prohibit subsequent purchasers from suing builders for breach of an implied warranty does not unjustly insulate builders from liability. As is the case here, the subsequent purchaser can sue his vendor based on the contract between them, and the vendor can cross-claim against the builder from whom he purchased the house, based on an implied warranty claim. Had the builder and first purchaser agreed on a cheaper, substandard house, that defense could be asserted by the builder. Such a course allows the fault to be allocated as it should, without limiting the freedom to contract or changing the law to fit the facts.

This decision not only limits the builder-first purchaser's freedom to contract and allocate risks but, because it extends builders' liability into some indistinct future, it must raise total costs that will, in turn, be passed onto consumers as more expensive housing.

When we combine the majority's holding that a builder is responsible for a defect for a reasonable time with the tort law "discovery rule" as a judicial amendment to the contract statute of limitations, it is obvious that a builder's liability "tail" is frightful. When a case arrives in an appellate court, the court tends to look at the case at the micro-level. In this case, viewed at the micro-level, the plight of the homeowner generates substantial sympathy. However, cases of this type also have a macro-level dimension, and usually in commercial matters the macro-level dimension overshadows the micro-level dimension.

At some point exposure to liability must end unless we want markets in every line of liability insurance to unravel. Insurers can insure against random, fortuitous events whose occurrence can be accurately estimated on the basis of past history. However, what insurers can't insure against is new liability both unknown and unknowable at the time a policy is written. Indeed, it is because of the courts' indifference to stability and predictability in the law that insurance markets have already unraveled in liability coverage for municipal parks, recreational establishments like riding stables, and for manufacturers of many products like sports equipment. *See,* Priest, "The Current Insurance Crisis and Modern Tort Law," 96 *Yale L.J.* 1521 (1987).

Unfortunately, changes in the decisional law are inherently retroactive; unlike both legislatures and administrative agencies, courts make law *only* through cases and controversies. In the cases that provide the courts with opportunities to create new law, all the relevant activities have inevitably already occurred. I shall not be so disingenuous as to cry foul because the court is "legislating." "Legislating," regardless of how that term is defined, is what appellate courts do. And that is as it was in the beginning, is now, and ever shall be, world without end.[4]

But even admitting that we "legislate" all the time, it is appropriate for courts to be mindful of the awesome retroactive im-

---

2. *See* 10 A.L.R.4th 385 § 5(a).

3. *Id.* at § 5(b).

4. See, Book One of *The Digest of Justinian,* "De Legibus Senatusque Consultis Et Longa Constuetudine" 32 for the proposition that Roman courts could declare obsolete statutes ineffec-

plications of the peculiar way in which they make new law, and to temper their instincts for the public good at the micro-level with an understanding of what stability and predictability do for the public good at the macro-level. This, then, is at the heart of principled (as opposed to result-oriented) judicial restraint.[5] Today's decision confounds the legitimate expectations of yesterday's developers and contractors. Furthermore, it knocks into a cocked hat the actuarial considerations that instructed the understanding of their insurers until today.

At the micro-level it is not even unreasonable to expect the buyer of a used house to solicit and pay for the opinion of a structural engineer. We must assume some minimal level of responsibility and adult behavior on the part of purchasers. If there is a patent defect of which the seller is aware, the purchaser may, of course, sue the seller for fraud. Furthermore, an original purchaser may sue the contractor if a house turns out not to be what the buyer contracted for. However, notwithstanding micro-level sympathy for the poor chap who buys a house only to discover later that the basement floods, at the macro-level it is best to return to a bright line rule that in the non-mass market context, there must be privity of contract before a purchaser is protected by a warranty.

The majority has also held that the lower court erred in dismissing plaintiff's claim for relief based on defendant builder's alleged negligence. It seems that of late courts have blurred the distinction between tort and contract actions even though from a functional (as opposed to a formalistic) point of view those distinctions continue to have vitality.

Once again, Justice Rovira in his dissent in *Cosmopolitan Homes, supra* at 4, persuasively argues why a builder should not be held liable for economic loss [6] to a subsequent purchaser based on a negligence theory.

> "The majority here, as have other courts, emphasizes the seemingly arbitrary distinction between economic loss and loss from personal injury or property damage.... [The] court's reasoning is flawed, because it confuses the measure of damages with duty. The reason for allowing tort recovery for personal injuries, but not allowing recovery for economic loss, is that in the former case a tort duty—a duty imposed by law—has been violated, while in the latter case it has not."

663 P.2d 1041 at 1049.

Although many courts have asserted that there is no meaningful distinction between economic loss and personal injury, I believe that Justice Rovira is correct in acknowledging the distinction in a case such as this. Liability for injuries to a person resulting from a builder's negligence arises from his duty sounding in tort. However, when the harm suffered by plaintiffs is essentially the loss of their bargain in purchasing a house, the action arises from contract. By failing to recognize this distinction, the majority is suggesting that commercial expectations are protected by tort law, and that every breach of contract is potentially cognizable in tort.

Maintaining the distinction between contract and tort duties is important as a matter of public policy. The number of potential victims who will suffer personal injuries from builders' negligence is vanishing-

---

tive. The inherent relationship between adjudication and legislation proceeds from the preeminent rule of jurisprudence, namely that no rule determines its own application. Any institution entrusted to administer rules will inevitably alter those rules at the margin as circumstances appear to require.

**5.** *See,* R. Neely, *How Courts Govern America,* Yale University Press (New Haven, Conn., 1980); *Judicial Jeopardy: When Business Collides with the Courts,* Addison–Wesley (Reading,

Mass., 1986) Chapt. 4. These books are not cited as "authority" to bolster the argument in the text; rather, I cite them to indicate to the interested reader that I have addressed the problem of how courts make law at greater length elsewhere.

**6.** Though this Court has held that economic loss is recoverable in strict liability cases, *Star Furniture Co. v. Pulaski Furniture Co.,* 171 W.Va. 79, 297 S.E.2d 854 (1982), we have not yet extended this decision to negligence actions.

ly small, but those few who are injured will often suffer great harm. It is sound policy to provide a safety net for these relatively few victims and that is the type of isolated, fortuitous event against the occurrence of which it is easy to insure. However, to allow contract damages for unworkmanlike construction to all subsequent purchasers is to invite a never-ending flood of litigation. To assure in such a manner that all purchasers of houses get the benefit of their bargains will only provide an additional chapter in the "Lawyer's Relief Act" and further clog the court system without any concomitant increase in justice.

Maintaining the distinction between contract and tort actions also solves the problem with defendants' statute of limitations argument. In a case where a defective roof falls and injures a plaintiff, it is clear that the statute of limitations begins to run when the roof falls in. If the builder is negligent in such a case, he will not be protected by lack of privity. However, when a purchaser buys a defective house which floods, and the purchaser fails to sue the builder within the statutory time, his contract action is no longer enforceable. Because the subsequent purchaser should logically be able to rise no higher than his vendor, the subsequent purchaser should be barred from a contract action as well. The only alternative is to allow each subsequent purchaser to start the running of the statute anew and to extend a builder's liability forever.