## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Elliott Grisell and Lorri Grisell,**
**Plaintiffs Below, Petitioners**

**vs.) No. 22-0341** (Marshall County 19-C-187)

**Shelly & Sands, Inc.,**
**Defendant Below, Respondent**

**FILED**

**November 6, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners Elliott and Lorri Grisell appeal the Circuit Court of Marshall County's April 5, 2022, order granting summary judgment in favor of Respondent Shelly & Sands, Inc. in this negligence action stemming from the slipping of petitioners' property upon which respondent deposited, leveled, and graded fill material at the behest of the property's previous owner some four years earlier. Upon our review, we find no error and, accordingly, affirm the circuit court's order.[1]

### I.     Facts and Procedural History

In 2016, petitioners purchased approximately 6.7 acres of real property located in Glen Dale, Marshall County, from Alfred and Susan Renzella. In 2012, while respondent was performing a local highway improvement project for the West Virginia Division of Highways, Mr. Renzella entered into a Waste Agreement with respondent whereby, at no cost to Mr. Renzella, respondent agreed to deposit on his property surplus excavation and demolition materials "of whatever form, content or nature encountered by [respondent], in the performance of its project excavation and demolition operations (exclusive of any hazardous materials)." It was also agreed that respondent would deposit the materials "at such place or places [on the property] as is deemed desirable in the judgement of [respondent] to facilitate the depositing of the Materials," and that respondent would not be responsible "for damages or diminution in value resulting to the Premises by reason of . . . the consequences of the placement of the Materials upon the Premises."

---

[1] Petitioners appear by counsel Eric M. Gordon. Respondent is represented by counsel Adam M. Barnes.

1

Respondent's foreman and signator to the agreement, Terry LePage, agreed to "level up waste site + grade slope."

Prior to selling the property to petitioners, Mr. Renzella informed them that fill material had been placed on the property and, without disclosing the make-up of the material, assured them that the work had been done properly. Petitioners hired an independent excavator to inspect the property to determine if the land was suitable for building a garage or pool. Although the inspector advised petitioners not to build on top of the land for a few more years, petitioners did not have any concerns about the property and proceeded to purchase it.

Beginning in June of 2017, petitioners began noticing cracks in the property, and on July 28, 2017, during a heavy rainstorm, the area became saturated and slipped downhill. The fill material damaged petitioners' property[2] and encroached upon the property of their neighbor, damaging and knocking over trees.

Petitioners subsequently filed suit, alleging in their Amended Complaint that respondent[3]

> spread the material on the property in a negligent and improper manner, not up to the reasonable and customary standards of a contractor, and in a manner not fit for the purpose for which it was placed on the property, by spreading the material over a natural freshwater spring and not redirecting the same, and by blocking previously installed drains and/or culverts that previously captured water runoff, allowing the area encompassing the material to become saturated.
>
> [Respondent] owed a duty when placing the material on the property to do so as a reasonable and prudent contractor and in a manner fit for the particular purpose for which it was placed upon the property. [Respondent] further owed a duty in placing the material on the property to do so in a manner that

_____

[2] Petitioners' residence was not damaged by the slip.

[3] The West Virginia Department of Transportation, Division of Highways, was also named as a defendant, but was later dismissed.

would not cause damage to the property or adjacent properties.[4]

Mr. LePage testified that the waste material from the excavation project consisted of dirt, concrete, and rock and that Mr. Renzella "wasn't picky about what was being delivered to his property." He further testified that the City of Glen Dale and the Marshall County School District dumped fill material onto the property both before respondent began dumping and, "occasionally[,] while [he] was there." According to Mr. LePage, Mr. Renzella directed where he wanted the material dumped on the property; Renzella never objected "that something was dumped where it shouldn't have been;" and Mr. Renzella never complained about the manner in which the dumped fill was leveled up or how the final sloping was done. Mr. LePage denied covering up the culvert that ran under the road with fill material, testifying that "[t]he culvert was clear." At one point, Mr. LePage observed water coming out at the toe of the slope where the fill material had been placed and acknowledged that was "going to be an issue over time." At Mr. Renzella's request, Mr. LePage addressed the issue by placing stone "[r]ight at the edge so the water would run through the rock on down in the ditch." Mr. LePage denied that he agreed to terrace the property and confirmed that "it was just going to be a slope."

Stephen Rogers, a project manager for an excavation firm and petitioners' designated expert "in the field of land slip mitigation and repair," testified that he visited the property after the slip occurred to prepare a repair estimate and that his company cleaned out two culverts that "went under the road" and a ditch along the driveway. He testified that one of the culverts "was blocked on the end. And then the culvert backed up and material from the upper side had washed down in it and plugged it up." However, Mr. Rogers could not determine why the second culvert "was blocked or otherwise not working as desired." Mr. Rogers conceded that neither he "[n]or anyone at [his] company performed any kind of analysis to determine whether the slip happened because of the water, or the slip happened because of the content of the fill, or some combination, or some other factor." Although Mr. Rogers initially indicated that he would not testify at trial "as to what caused the slip to happen" or "why [respondent] might be responsible for why the slip happened," a later-submitted Plaintiffs' Designation of Expert Witness stated that Mr. Rogers would opine that the cause of the slip was due to (1) the existing culverts being blocked by the fill material, which caused the ground to become "saturated with the weight of the material causing the ground to become unstable thereby resulting in it moving" and (2) respondent's failure to install any or sufficient drainage to carry water from the area where the fill was installed on the property.

---

[4] Petitioners were unaware that a written Waste Agreement existed at the time they filed suit.

3

On October 21, 2021, respondent filed a motion for summary judgment. It argued that it performed its duty pursuant to the Waste Agreement and "in accordance with Mr. Renzella's directives and to his satisfaction;" that there was evidence that other entities also dumped material on the property both before and during the same period of time as respondent; and that, contrary to petitioners' claim that respondent covered a natural freshwater spring and blocked existing drains and culverts, causing the filled property to slip, the only evidence on this point was Mr. LePage's testimony that the culvert was clear. According to respondent, petitioner's claim that respondent was negligent was based solely on speculation and conjecture, which is legally insufficient to defeat a motion for summary judgment.

In their response to respondent's motion for summary judgment, petitioners argued that respondent had a common law duty to exercise reasonable care and skill in conducting its operations on the subject property and that respondent breached that duty by failing to properly capture and divert water that Mr. LePage observed flowing from the toe of the fill material and acknowledged "was going to be an issue over time." Petitioners attached to its summary judgment response an affidavit in which Mr. Rogers opined, after reviewing Mr. LePage's deposition testimony, that the primary cause of the slip was respondent's "failure to properly drain water emerging from the toe of where material was deposited" and install "a proper toe key or benching . . . to make a stable foundation to finish a proper slope." According to Mr. Rogers, "merely level[ing], grad[ing] and 'push[ing]' off the fill material. . . . was also improper and was a contributing factor to the slip occurring." Petitioners argued that genuine issues of material fact existed as to whether respondent breached its duty of care.

By order entered on April 5, 2022, the circuit court granted respondent's motion for summary judgment, concluding that respondent did not owe any duty of care to petitioners and, if a duty did exist, the record failed to create a genuine issue of material fact that respondent engaged in any conduct that breached that duty.[5] This appeal followed.

---

[5] At the hearing on the motion for summary judgment, the circuit court requested supplemental briefing on the "gist of the action" doctrine in order to determine whether petitioners' negligence claim arose independent of the existence of the Waste Agreement. *See Dan Ryan Builders, Inc. v. Crystal Ridge Development, Inc.*, 783 F.3d 976 (4th Cir. 2015). The circuit court ultimately concluded that petitioners "do not have a cause of action against [respondent] based in contract" because there was no privity of contract between respondent and petitioners; petitioners were not third-party beneficiaries to the Waste Agreement; and petitioners were not, and did not claim to be, assignees under the agreement. Thus, the circuit court concluded, petitioners' claim against respondent sounded in tort rather than contract. Neither party has appealed this ruling.

4

## II.     Standard of Review

Our review of the circuit court's entry of summary judgment is *de novo. See* Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). "Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 2, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995).

## III.     Discussion

At issue in this appeal is whether the circuit court erred in concluding that petitioners failed to establish a prima facie case of negligence against respondent. "To succeed on [a] negligence claim, a plaintiff must establish by the preponderance of the evidence that the defendant owes him a duty, that there was a negligent breach of that duty, and that injuries received by the plaintiff resulted proximately from the breach of the duty." *Jones v. Logan Cty. Bd. of Educ.*, 247 W. Va. 463, – , 881 S.E.2d 374, 383 (2022) (citation omitted). "[I]t must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff. No action for negligence will lie without a duty broken." Syl. Pt. 1, in part, *Parsley v. Gen. Motors Acceptance Corp.*, 167 W. Va. 866, 280 S.E.2d 703 (1981).

> The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?

Syl. Pt. 3, *Sewell v. Gregory*, 179 W.Va. 585, 371 S.E.2d 82 (1988).

Even if we assume that respondent owed petitioners a duty of care because it was foreseeable that there would be subsequent owners of the subject property, *see id.* at 588, 371 S.E.2d at 85, and that respondent's "work, if negligently done, may cause damage to the property," *id.*, we agree with the circuit court that petitioners failed to establish that respondent breached a duty of care under the circumstances. "'Negligence is the violation of the duty of taking care under the given circumstances. It is not absolute; but is always relative to some circumstances of time, place, manner, or person.' Syl. pt. 1, *Dicken v. Liverpool Salt & Coal Co.*, 41 W. Va. 511, 23 S.E. 582 (1895)." Syl. Pt. 5, *Wheeling Park Comm. v. Dattoli*, 237 W. Va. 275, 787 S.E.2d 546 (2016). The undisputed evidence showed that fill material, "of whatever form, content or nature encountered by [respondent], in the performance of" the highway project would be, and was, deposited

onto the subject property by respondent at the direction and to the satisfaction of Mr. Renzella. It was further undisputed that entities other than respondent (and for which respondent bore no responsibility) also deposited fill material on the property both before and during the same period of time as respondent. Although petitioners allege that the slip was caused by respondent covering a freshwater spring and blocking existing drains and/or culverts with fill material, there was no evidence to that effect offered below. *See Williams*, 194 W. Va. at 60, 459 S.E.2d at 337 ("the party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor"). Furthermore, although petitioners also contend that respondent was negligent in failing to install drains or a proper toe slope or benching so as to remediate water flow, petitioners failed to present any evidence that respondent agreed to, or was tasked with, any activity beyond depositing and leveling the fill material and grading the slope. There is simply no evidence that respondent was engaged to expand and/or engineer the property in the manner petitioners now claim – all for no renumeration.

## IV.    Conclusion

For the reasons stated above, we affirm the Circuit Court of Marshall County's April 5, 2022, order granting summary judgment in favor of respondent.

Affirmed.

**ISSUED:** November 6, 2023

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn