No.81-159

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

GLENN HAWTHORNE, d/b/a
HAWTHORNE STEEL et al.,

Plaintiff and Appellant,

vs.

KOBER CONSTRUCTION COMPANY,
INC., et al.,

Defendant and Respondent.

---

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone
Honorable William J. Speare, Judge presiding.

Counsel of Record:

For Appellant:

Jardine, Stephenson, Blewett & Weaver, Great Falls,
Montana
Jack Lewis argued, Great Falls, Montana

For Respondent:

Crowley, Haughey, Hanson, Toole & Dietrich, Billings,
Montana
Cynthia Ford argued, Billints, Montana
Cebull & Jones, Billings, Montana

---

Submitted: December 4, 1981

Decided: FEB 1 1 1982

Filed: FEB 1 1 1982

_Thomas J. Kearney_
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

This action was instituted by Glenn Hawthorne, d/b/a Hawthorne Steel (Hawthorne), against the prime contractor Kober Construction Co., Inc. (Kober) and against Pittsburgh-Des Moines Steel Company (PDM), a steel supplier. The trial court entered partial summary judgment against Hawthorne and in favor of PDM. Hawthorne appeals following certification by the trial court that the order was an appealable one.

Kober contracted to build the Metra building in Billings, Montana, and on January 2, 1974, entered into a contract with PDM by which PDM agreed to furnish steel for the construction of the building. On January 11, 1974, Kober entered into a subcontract with Hawthorne by which Hawthorne agreed to erect the steel.

On March 25, 1974, Hawthorne and his son, Jack, met with officials of PDM in Des Moine, Iowa, to discuss arrangements for the delivery of steel. A delivery date for the steel was not specifically discussed at this meeting, but a delivery date of May 1, 1974, had been discussed between the parties on prior occasions. Hawthorne, by affidavit, stated that he mobilized his employees to commence erection of structural steel in June, 1974.

On March 4, 1974, PDM had received a directive from the United States Government to ship steel to the government on or before April 17, 1974. The contract existing between PDM and the United States for the delivery of steel pre-existed the contract between Kober and Hawthorne. Hawthorne was not told of the contract's existence.

PDM did not deliver steel in May or June of 1974, and on August 9, 1974, PDM acknowledged by letter to Kober

Construction that it was having schedule problems in meeting its commitments to customers because of the directive it had received from the United States Government on March 4, 1974. Apparently Kober did not transmit this information to Hawthorne. It was not until the latter part of October, 1974, that Hawthorne received any shipments and then, according to Hawthorne, it did not receive the steel shipments in the sequence promised by PDM.

On June 2, 1975, Hawthorne attended a meeting in Billings, at which PDM's representative was in attendance. At this time, Hawthorne was shown the directive from the United States Government issued to PDM. Hawthorne's affidavit, which for purposes of summary judgment, would have to be taken as true, provided:

> "At no time during our meeting with Mr. Davis in March, 1974, did he make any mention of the directive letter from the U.S. Department of Commerce; at no time was I or anyone in my business advised of the directive letter from the U.S. Department of Commerce until the meeting I attended with Mr. Davis in Billings, Montana, on or about June 2, 1975."

By way of complaint filed in the District Court, Hawthorne alleged that the delay in delivery of steel caused him to be unable to finish his work until about January of 1976. He alleged that as a consequence of the delay sustained, he suffered financial losses.

PDM did not dispute that it failed to deliver steel. PDM alleged that it had no contractual relationship with Hawthorne and because of the lack of privity, Hawthorne could not maintain an action against PDM. The trial court agreed and partial summary judgment in favor of PDM resulted.

The following issues are presented on appeal:

(1) Can Hawthorne maintain an action against PDM based upon negligence?

(2) If privity of contract is required, did Hawthorne have privity with PDM on the basis of their interaction?

(3) Can Hawthorne prevail on the basis of implied or quasi-contract?

(4) Is the action barred by the statute of limitations?

We hold that privity of contract is not required to maintain an action grounded in negligence. Therefore, we need not discuss a contention that privity existed or that this action can be maintained on the basis of implied or quasi-contract. We further find that the action is not barred by the statute of limitations.

The principle issue to be determined is whether Hawthorne can maintain an action for negligence in the performance of duties growing out of contract, where no privity of contract existed. We have examined the authorities and find a division to exist.

The California Supreme Court resolved a similar question in determining whether a contractor who undertook construction work pursuant to a contract with an owner of premises, could be held liable in tort for business losses suffered by a lessee where the lessee alleged the contractor negligently failed to complete the project with due diligence. In J'Aire Corporation v. Gregory (1979), 157 Cal.Rptr. 407, 598 P.2d 60, the California Supreme Court said:

> ". . . Where a special relationship exists between the parties, a plaintiff may recover for loss of expected economic advantage through the negligent performance of a contract although the parties were not in contractual privity."

The Oregon Supreme Court has denied recovery on the basis of lack of privity. In Mandal v. Hoffman Construction Co. (1974), 270 Or. 248, 527 P.2d 387, the City of Salem had contracted with a landscaping firm which in turn sub-contracted

-4-

the work to the plaintiff.  In a totally separate contract, the city hired the defendant to do site development work. The plaintiff subcontractor alleged that because of negligence on the part of the site developer, plaintiff was unable to complete its work within prescribed time and thereby suffered damage.  In deciding for defendant, the Oregon Supreme Court said:

> "The question is whether non-intentional con-
> duct of this nature will constitute a breach
> of duty, within the framework of the law of
> torts, to a person in the position of plain-
> tiff in this case.  We hold that there is no
> such duty where the only negligence charged
> is the failure to perform a contract with a
> third party."

The philosophy of the Oregon court was, at one time, the established rule.  There is a trend of authority, represented by the California Supreme Court, moving away from privity as a requirement in this type of action.

This Court was a pioneer in abolishing privity as a requirement for recovery in a personal injury or wrongful death case.  Brandenburger v. Toyota (1973), 162 Mont. 506, 513 P.2d 268.  We have not felt permanently bound to archaic legal concepts no matter how deeply rooted they may be.  We view privity to be a concept having proper application in the area of contract law.  There seems to be no sound public policy argument for extending its application to tort.

Plaintiff's action sounds in tort.  The action is one for negligence in the performance of a contractual duty. With respect to such an action Professor Prosser, Law of Torts, 4th Ed., Section 93, says:

> ". . . by entering into a contract with A,
> the defendant may place himself in such a
> relation toward B that the law will impose
> upon him an obligation, sounding in tort
> and not in contract, to act in such a way

that B will not be injured. The incidental
fact of the existence of the contract with
A does not negative the responsibility of
the actor when he enters upon a course of
affirmative conduct which may be expected
to affect the interests of another person.

". . .

". . . there are situations in which the mak-
ing of the contract creates a relation between
the defendant and the promisee, which is suf-
ficient to impose a tort duty of reasonable
care. By the same token, there are situations
in which the making of a contract with A may
create a relation between the defendant and
B, which will create a similar duty toward B,
and may result in liability for failure to
act."

The facts of this case speak strongly in favor of
adopting the rule enunciated by Prosser. A trier of fact
could determine, from the record before the trial court
here, that PDM had reason to know that Hawthorne was relying
upon PDM to deliver steel for erection in June of 1974.
Likewise, that trier of fact could find that PDM could
foresee damage to Hawthorne arising from failure of PDM to
honor its contract commitment to Kober. Thus, to paraphrase
Prossor, by entering into a contract with Kober, PDM has
placed itself in such a relation toward Hawthorne, that the
law will impose upon PDM an obligation, sounding in tort,
to act in such a way that Hawthorne will not be injured.

We do not intend to indicate a breach of duty on the
part of PDM. If there are material issues of genuine fact,
those facts must be determined. We simply hold that, viewing
the facts in a light most favorable to Hawthorne, against
whom summary judgment was entered, a sufficient case is
presented to foreclose the entry of summary judgment.

This case is governed by the three year statute of
limitations applicable to negligence cases. Section 27-2-
202(3), MCA. Hawthorne's claim for negligence is rooted in

the failure of PDM to honor a contract commitment for the delivery of steel in May of 1974. The statute of limitations could not run before that time. Hawthorne's complaint was filed in April of 1977, within the three year period of limitations. Accordingly, it was timely.

Partial summary judgment in favor of Pittsburgh-Des Moines Steel Company is vacated. The cause is remanded to the District Court to proceed in accordance with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices