No. 97-213

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 73


RAYMOND DALE RHODE,

Plaintiff and Appellant,

v.

LOIS HALL ADAMS,

Defendant and Respondent.


APPEAL FROM:   District Court of the First Judicial District,
                In and for the County of Lewis and Clark,
            The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

John L. Hollow (argued); Attorney at Law; Helena, Montana

For Respondents:

Diana P. Leibinger-Koch (argued), Attorney at Law,
        Helena, Montana (for Respondent Adams)

For Amicus Curiae:

Patricia O'Brien Cotter; Cotter & Cotter, P.C.; Great Falls,
Montana(for Montana Trial Lawyers Association); Robert W. Minto, Jr.; Attorneys
                            Liability
Protection Society; Missoula, Montana; and John R. Gordon; Reep, Spoon  & Gordon, P.
                              C.;
Missoula, Montana (for Attorneys Liability Protection Society); W. Corbin Howard;
            Attorney at Law; Billings, Montana
        (for Child and Family Law Section, State Bar of Montana)


Heard:  January 20, 1998

Submitted: January 21, 1998
Decided:    April 3, 1998
Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1     Raymond Dale Rhode brought this action in the District Court for the First Judicial District in Lewis and Clark County to recover damages caused by the violation of his civil rights by the Honorable Dorothy McCarter, District Judge of the First Judicial District, and by the violation of his right to procedural due process by Lois Hall Adams, the attorney who represented his wife in the parties' dissolution of marriage action.  Rhode moved the District Court for an order which would allow him to amend his allegations against Adams and add his minor children as plaintiffs.  The District Court denied Rhode's request and granted the defendants' motions to dismiss.  Rhode appeals from the District Court's denial of his motion to add his children as plaintiffs and, necessarily, from the District Court's dismissal of Adams.  We affirm the order and judgment of the District Court.

¶2     The issues raised on appeal are whether, by adding Rhode's children as defendants, his amended complaint would have stated a cause of action against Adams, and whether the District Court, therefore, erred when it denied Rhode's motion to file an amended complaint.

STATEMENT OF FACTS

¶3     Raymond Dale Rhode was married to Kelly Lynn Lazenby in 1984. Three children were born of that marriage.  They are now thirteen, eleven, and eleven years old, respectively.  Rhode and Lazenby were divorced and then remarried in LeGrande, Oregon.  The couple remained married until January 28, 1991, when they divorced in Montgomery County, Tennessee.  It is not clear from the record who was awarded custody following the second divorce. However, Rhode obtained physical custody of the children and moved with them to Townsend, Montana.

¶4     According to Rhode, on May 11, 1993, his three children did not return from school to his home in Townsend.  Rhode learned from the sheriff of Broadwater County that Lois Hall Adams, Lazenby's attorney, had obtained Judge Dorothy McCarter's signature on an order which, based on the decree of the Tennessee court, awarded sole custody of the couple's children to Lazenby.  Adams gave the order to the sheriff who then presented it to the school administrator at the children's school, removed the children from the school, and handed them over to Lazenby.  Lazenby immediately left the state of Montana with the children.

¶5     On July 14, 1993, the Honorable Jeffery Sherlock, District Judge of the First Judicial District, overturned Judge McCarter's order.  Judge Sherlock found that Rhode was not afforded adequate notice and opportunity to be heard before Judge McCarter issued her order.

¶6    In this action, Rhode alleged that Judge McCarter violated his civil rights because she was without jurisdiction to grant Lazenby custody of the children.  He also contended that Adams is liable to him because she breached her duty to comply with Montana law.  As a result of Judge McCarter's and Adams' actions, Rhode claimed to have expended a considerable amount of time, money, and energy in his efforts to locate and reestablish contact with his children after Judge McCarter's order was quashed.

¶7    Rhode moved the District Court for an order which would allow him to amend his complaint by adding as plaintiffs the parties' children and setting forth factual allegations that Adams owed a duty to the children.  Rhode's amended complaint would have alleged that Adams was negligent when she obtained the order because she failed to follow the laws and procedures that are intended to prevent the harm that was caused to the children.  Rhode maintains that one of the children was physically and sexually abused while the children were with Lazenby both prior to this incident and after Lazenby removed the children from Montana.  According to Rhode, but for the unlawful order that Adams sought and received from Judge McCarter, Lazenby would not have had the means to obtain physical custody of the children.

¶8    On December 18, 1996, Judge Thomas Honzel denied Rhode's request to file an amended complaint.  The court reasoned that, if filed, the amended complaint, which would add the children as plaintiffs, would not change the outcome of the case and would instead create additional expense and frustration for the parties.  The District Court also granted Judge McCarter's, the State of Montana's, and Adams' motions to dismiss.  It concluded that Adams owed no duty to the children because they were not her clients and that Judge McCarter is shielded from suit by judicial immunity.  Rhode, on behalf of the parties' children, filed a notice of appeal.

### STANDARD OF REVIEW

¶9    We have held that the determination that a complaint does not state a claim upon which relief can be granted is a conclusion of law which we review to determine whether the district court is correct.  See Lockwood v. W.R. Grace & Co. (1995), 272 Mont. 202, 207, 900 P.2d 314, 317.  We have further held that the question of whether a legal duty is owed by one person to another is a question of law.  See Webb v. T.D. (Mont. 1997), 54 St. Rep. 1502, 1503.

### DISCUSSION

¶10   The issue Rhode raises on appeal is whether or not the District Court erred when it denied Rhode's motion to file an amended complaint which would add his minor children as plaintiffs.  That issue, necessarily, involves the related issue of whether, as amended, the complaint would have stated a cause of action against Adams.  Rhode's amended complaint, had it been filed, would have alleged that the children were injured by Adams' negligence when she obtained the order which gave Lazenby custody of the children.  Rhode contends that Article II, Section 16, of the Montana Constitution guarantees the children a remedy for the harm caused by Adams.  That section provides all people with a speedy remedy for every injury of person, property, or

character.  Rhode further maintains that Adams is responsible for any harm she may have caused the children because § 27-1-701, MCA, states, except as otherwise provided by law, "everyone is responsible . . . for an injury occasioned to another by want of ordinary care."  Rhode contends that attorneys, including Adams, should not be an exception to that rule.

¶11  According to Rhode, the stated purposes of the Uniform Child Custody Jurisdiction Act involve the protection of children from the harmful effects of abduction and other unilateral removals of children, as well as to continuously protect the best interests of the children.  See § 40-7-102(e), MCA.  He also argues that one of the stated purposes of Montana's laws governing dissolution of marriage is to mitigate the potential harm to the parties children caused by the process of legal dissolution of marriage.  See § 40-4-101(3), MCA.

¶12  We have held that in a professional negligence action, the plaintiff must prove that the professional owed him or her a duty.  See Carlson v. Morton (1987), 229 Mont. 234, 238, 745 P.2d 1133, 1136.  However, we have never discussed whether an attorney owes a duty to third persons to exercise care in the performance of services for his or her client.

¶13  Although Rhode concedes that there are no prior Montana decisions which create a duty from an attorney to someone other than his or her client, he relies on the following decisions from other jurisdictions: Goldberg v. Frye (Cal. 1990), 266 Cal Rptr. 483; Neal v. Baker (Ill. App. Ct. 1990), 551 N.E.2d 704, appeal denied (Ill. 1990), 555 N.E.2d 378; Trask v. Butler (Wash. 1994), 872 P.2d 1080.  Each of these jurisdictions takes a slightly different approach to the issue of an attorney's duty to a non-client.  Rhode urges this Court to adopt the test and rule set forth in Trask.

¶14  In Trask, the Supreme Court of Washington adopted California's multi-factor balancing test to determine whether an attorney owes a duty to a non-client.  The multi-factor balancing test involves an analysis of the following six factors:

    (1)  the extent to which the transaction was intended to affect the
            plaintiff;

    (2)  the foreseeability of harm to the plaintiff;

    (3)  the degree of certainty that the plaintiff suffered injury;

    (4)  the closeness of the connection between the defendant's conduct
            and the injury;

    (5)  the policy of preventing future harm;  and

    (6)  the extent to which the profession would be unduly burdened by
            a finding of liability.

    Trask, 872 P.2d at 1083.  According to the Trask court, the first and threshold inquiry in the multi-factor balancing test is whether the attorney's services were intended to affect the plaintiff.  See Trask, 872 P.2d at 1083.

¶15   In Trask, the court analyzed the multi-factor balancing test within the context of the duty a personal representative's attorney owes to the estate, or to the beneficiaries of the estate, and found that no duty is owed. See Trask, 872 P.2d at 1085.  The court explained that the multi-factor balancing test does not impose legal malpractice liability upon the personal representative's attorney, in part because "the unresolvable conflict of interest an estate attorney encounters in deciding whether to represent the personal representative, the estate, or the estate heirs unduly burdens the legal profession."  Trask, 872 P.2d at 1085. The court held that the multi-factor balancing test also requires an evaluation of  public policy before a court can find a duty to a third party.  It explained that the policy considerations which weigh against finding a duty to a non-client are the strongest when doing so would detract from the attorney's ethical obligations to the client. See Trask, 872 P.2d at 1085.  It described such a situation as one in which a duty to a non-client creates a risk of divided loyalties because of a conflicting interest or of potential for breach of confidence.  According to the Trask court, conflicts of interest arise in estate matters whenever the interest of the personal representative is not harmonious with the interest of an heir and, thus, the estate proceedings become adversarial.  See Trask, 872 P.2d at 1085.

¶16  Rhode contends that in this case all of the elements of the Trask multi-factor test are present and there is no danger of a division of loyalties.  He maintains that if a division of loyalty arises, the attorney may request that counsel be appointed for the children.

¶17  We conclude, however, that while a multi-factor balancing test, such as that set out in Trask, may be effective when used to address the duties of attorneys in transactional matters or estate planning and probate practice, this model is not appropriate to define an attorney's duties while representing clients in adversarial proceedings.  In a disputed child custody case, for example, there would be substantial risk of divided loyalties between the client and the children.

¶18  California and Washington, the leading proponents of the multi-factor test, also recognize that this test does not apply in adversary situations.  See Norton v. Hines (Cal. 1975), 123 Cal. Rptr. 237; Bowman v. John Doe Two (Wash. 1985), 704 P.2d 140.  In Bowman, the Washington Supreme Court recognized that the "[e]xistence of a duty to an adverse party beyond the courtesy and respect owed all participants in the legal process would interfere with the undivided loyalty an attorney owes a client and would diminish an attorney's ability to achieve the most advantageous position for a client."  Bowman, 704 P.2d at 144 (citation omitted).

¶19  Other jurisdictions have similarly found that to place a duty upon an attorney to a non-client in an adversarial situation would inhibit free access to the courts by unduly inhibiting attorneys from bringing close cases, innovative theories, or suing defendants who might retaliate.  See Friedman v. Dozoroc (Mich. 1981), 312 N.W.2d 585.  As the Friedman court explained, an adverse party has no basis for reliance on the actions of an adversary's counsel and that fact distinguishes an attorney's relationship from the third-party relationship

of other professions. See Friedman, 312 N.W.2d at 593-94.

¶20 The Colorado Court of Appeals found that an attorney representing a parent in a contested custody proceeding does not per se also represent the children's interests. See McGee v. Hyatt Legal Services, Inc. (Colo. App. 1990), 813 P.2d 754. That court held that when custody is contested by each parent, such that the best interests of the child may be contrary to the parents' wishes, the duty of the attorney to represent his or her client zealously and ethically is inconsistent with any duty he or she might owe to the child. See McGee, 813 P.2d at 757. The McGee court further explained that this principal is implicitly recognized in Colorado's statute which permits the court to appoint an attorney to represent the minor child concerning custody, support, and visitation. See McGee, 813 P.2d at 757.

¶21 We agree that an attorney must be able to vigorously advocate his or her client's interests in litigation without being compromised by obligations to non-clients. Such vigorous representation of a client is an essential part of the adversarial system. See Rules 1.2, 1.7, 1.9, and 3.1, Montana Rules of Professional Conduct. This is not to say that an attorney who represents a parent in a contested child custody case should not advise his or her client to consider what is best for the children, and to work within the proper legal and ethical parameters when litigating custody and visitation. Nor are children without other protections. See § 40-4-205, MCA (appointment of guardian ad litem), and § 40-4-212, MCA (best interest of child to determine parenting plan). Furthermore, if the conduct of the attorney-advocate rises to the level of deceit, collusion, or intentionally reckless conduct, an injured party is entitled to recover treble damages (see § 37-61-406, MCA), and, under other limited circumstances, the attorney may be liable for malicious prosecution or abuse of process. See Hopper v. Drysdale (D. Mont. 1981), 524 F. Supp. 1039; Davis v. Sheriff (1988), 234 Mont. 126, 762 P.2d 221; Vehers v. Piquette (1984), 210 Mont, 386, 684 P.2d 476. However, we conclude that if an attorney owes the same duty of care to both the parent and the children, he or she will be able to serve neither effectively.

¶22 As stated by the court in Friedman, 312 N.W.2d 585, when the professional relationship between an attorney and a client is placed within an adversarial context in which the attorney functions as the advocate for the client, the attorney has a different relationship to non-clients than do members of other professions. This distinction is what differentiates this type of case from one involving non-client relationships with doctors, probate and estate planning attorneys, accountants, realtors, architects, and other similarly situated professionals.

¶23 We therefore conclude that because the interests of a parent and those of a child in a child custody case may not be identical, the attorney's duty runs solely to his or her client, except as otherwise specified in this opinion.

¶24 Accordingly, we conclude that the District Court did not err when it denied Rhode's motion to file an amended complaint. The judgment of the District Court is, therefore, affirmed.

```
                    /S/   TERRY N. TRIEWEILER


We Concur:

/S/  J. A.  TURNAGE
/S/  JAMES C. NELSON
/S/  WILLIAM E. HUNT, SR.
/S/  JIM REGNIER
/S/  JOHN S. HENSON
          District Court Judge, sitting for Justice W. William Leaphart
/S/  THOMAS M. McKITTRICK
            District Court Judge, sitting for Justice Karla M. Gray
```