JUSTICE NELSON,
concurring in part and dissenting in part.
¶70 I concur in the Court’s resolution of Issue 2 and certain parts of Issue 3.1 dissent, however, from the Court’s decision as to Issue 1 and other parts of Issue 3.
Issue 1
¶71 The Court begins by drawing a distinction between a professional negligence claim and a negligent misrepresentation claim. Opinion, ¶¶ 21-24. The Court explains that a professional negligence claim is an ordinary negligence action consisting of the traditional four elements:
1. duty
2. breach
3. causation
4. damages
Opinion, ¶ 22. A negligent misrepresentation claim, in contrast, is governed by Restatement (Second) of Torts § 552 (1977), hence prompting the moniker “§ 552 claim.” Opinion, ¶¶ 23-24. It consists of five elements:
*52 1. the defendant supplied false information in the course of its business
2. the defendant failed to exercise reasonable care in obtaining or communicating the information
3. the plaintiffs justifiable reliance on the false information caused the plaintiffs financial loss
4. the defendant intended to supply the information, or knew that the recipient of the information intended to supply it, for the benefit and guidance of a limited group of persons that included the plaintiff
5. the plaintiff relied on the information in a transaction that the defendant knew the information would influence
Opinion, ¶ 66. It should be noted that § 552’s standard weighs in favor of the negligent purveyor of false information, limiting liability to only those persons who the defendant intended or actually foresaw would rely on the information in a foreseen transaction.
¶72 After distinguishing between these two causes of action, the Court takes Glacier’s four-element professional negligence claim and remakes it into a five-element negligent misrepresentation claim. Opinion, ¶ 26. The Court then reviews Glacier’s filings in support of its motion for summary judgment and holds that Glacier has not satisfied the requirements of a § 552 claim. Opinion, ¶¶ 37-42.
¶73 It will surely come as a surprise to Glacier, however, when it learns that it has lost this case because it failed to adequately support a claim that it never even raised! Glacier alleged, and has always pursued, a professional negligence claim against Eide, not the negligent misrepresentation claim contrived by the Court. As noted, in order to recover in a professional negligence action, the plaintiff must prove that the professional owed him a duty, and that the professional failed to live up to that duty, thus causing damages to the plaintiff. Merzlak v. Purcell, 252 Mont. 527, 529, 830 P.2d 1278, 1279 (1992); accord Opinion, ¶ 22. Here, Glacier alleged in its complaint:
duty: Eide “had a duty to perform its professional obligations with the degree of learning, skill and judgment ordinarily possessed by members of the accounting profession and to perform any service undertaken in the manner a reasonably careful public accountant would do under the same or similar circumstances. ”
breach: Eide “failed to satisfy the standard of care imposed on public accounting firms” and therefore “breached the applicable standard of care and such breach constitutes negligence.”
causation and damages: “As a result of [Eide’s] breach of the *53 standard of care owed by public accountants, [Western Security and Glacier] have been damaged ....”
¶74 In its motion for partial summary judgment, Glacier asked the District Court to rule on what legal standard would be applied in determining the existence of a duty in Glacier’s professional negligence claim against Eide. Glacier began with the proposition that “[c]ertified public accountants are professionals and are liable for their professional negligence.” Glacier went on to argue (on the issue of duty) that “[t]o the extent Eide Bailly now claims the [near-privity] test governs professional negligence claims against an accountant in Montana, the defense must be rejected” (emphasis added). Glacier instead argued in favor of the “ordinary negligence” or “reasonably foreseeable plaintiff’ test. In this regard, Glacier specifically eschewed the “intended or actually foreseen” standard of § 552, quoting the following remarks by Justice Trieweiler in Jim’s Excavating Service v. HKM Assocs., 265 Mont. 494, 878 P.2d 248 (1994):
I would not limit an engineer’s duty to exercise reasonable care to that class of people set forth in § 552. Section 27-1-701, MCA, provides that “everyone is responsible not only for the results of his willful acts but also for an injury occasioned to another by his want of ordinary care or skill ....” I see no reason to treat engineers differently than anyone else, and therefore, would apply ordinary negligence rules to determine the scope of liability of the defendant in this case.
Id. at 517, 878 P.2d at 261 (Trieweiler, J., specially concurring). And in its reply brief, as the Court is forced to concede (Opinion, ¶ 29), Glacier offered § 552 only as an “alternative” to its preferred approach of applying ordinary negligence principles to the issue of duty. For these reasons, the Court’s remaking of Glacier’s professional negligence claim into a § 552 claim is especially egregious, given that Glacier actually eschews the Restatement’s approach.
¶75 Likewise on appeal, the parties discuss § 552 not as a freestanding cause of action, but as one of the several standards which have been discussed in this Court’s cases for deciding whether a duty exists in an action for professional negligence. (The other standards, discussed below, are the near-privity standard, the Prosser standard, and ordinary negligence rules.) Significantly, Glacier again does not argue in favor of adopting the restrictive “intended or actually foreseen” standard of § 552, but instead argues in favor of the broader “reasonably foreseeable plaintiff’ standard or, at a minimum, the “knew or should have foreseen” standard we applied in Jim’s Excavating. Indeed, contrary to the Court’s untenable remaking of *54 Glacier’s claim and legal theories, Glacier summarizes its argument as follows:
The [District Court] erred in rejecting the “reasonable foreseeability” standard for the imposition of a duty on Eide regarding users of its IMG audit reports. This Court’s decisions have either adopted that standard for professional negligence cases, or signaled it would be adopted in the proper case. [Emphasis added.] The court erred in holding that public policy does not support imposition of that standard. In fact, Montana statute imposes public duties on CPA auditors as to all reasonably foreseeable users of its audit reports.
Although this Court need not reach this issue if it agrees with Glacier on issue one, the court also erred in holding Eide was entitled to summary judgment on the duty issue under the “actually foreseen” [i.e., § 552] and “near privity” standards.
Glacier then goes on to argue that it is “entitled to have a jury decide whether Eide’s professionals were negligent, i.e., whether they ‘fail[ed] to use reasonable care.’ ” Glacier emphasizes that “reasonably foreseeable” is “the proper duty standard, and the [District Court] erred in refusing to apply it when ruling on summary judgment.” As noted, Glacier offers § 552 only as an alternative standard for determining the existence of a duty; and even then, Glacier asks this Court to apply the modified “knew or should have foreseen” version of § 552 that we adopted in Jim’s Excavating. Analogously, Eide argues in favor of the “near privity” standard, but then addresses § 552 only “to the extent that standard applies instead of the [near-privity] standard” for determining duty under what Eide refers to as Glacier’s “accounting negligence” claim.
¶76 In sum, Glacier and Eide have always analyzed the question of duty with the understanding that Glacier is pursuing a professional negligence claim. And so did the District Court. The court specifically stated in its order that Glacier sued Eide “alleging a single count of professional malpractice,” and the court then went on to address “the test in Montana for accountant liability to third parties” in professional negligence cases, ultimately adopting the near-privity standard.
¶77 Accordingly, it appears that this Court, once again, is the only participant in this case that does not recognize what the litigants and the trial court have known all along: that Glacier raised a professional negligence claim, not a negligent misrepresentation claim. Cf. Jones v. Mont. Univ. Sys., 2007 MT 82, ¶¶ 60-76,337 Mont. 1, 155 P.3d 1247 (Nelson, J., dissenting) (discussing the Court’s remaking of Bob Kelleher’s and Stan Jones’ First Amendment claims in that case, *55 despite the fact that “at every stage of the proceedings leading np to this appeal, the parties and the District Court all recognized that Kelleher and Jones were pursuing, among other things, a free speech claim under the First Amendment” (emphasis omitted)). Evidently unwilling to address the District Court’s patently erroneous ruling on the issue of duty in a third-party professional negligence action against an accounting firm, the Court distorts Glacier’s pleadings-proclaiming them to mean what the Court chooses them to mean, not what they actually say, cf. Mont. Sports Shooting Assn. v. State, 2008 MT 190, ¶ 38, 344 Mont. 1, 185 P.3d 1003 (Nelson, J., dissenting)-and then dismisses its own false construct. “It is inappropriate, however, for this Court to remake this case, in ways that are contrary to the record before us, so as to facilitate expedient disposal of a case that presents difficult issues ....” Jones, ¶ 67 (Nelson, J., dissenting).
¶78 As support for its remaking of Glacier’s claim, the Court observes that “Glacier does not assert a professional relationship.” Opinion, ¶ 25. This is simply untrue. Glacier does assert a professional relationship: a third-party “professional relationship” between Glacier and Eide, under which Eide owed a duty of care to Glacier in the preparation of the IMC audit reports. However, to the extent the Court is suggesting that Glacier needed to assert a first-party “professional relationship” in order to maintain a professional negligence action, we have already rejected this restrictive, actual-privity approach. See Watkins Trust v. Lacosta, 2004 MT 144, ¶¶ 21-22, 321 Mont. 432, 92 P.3d 620; Redies v. ALPS, 2007 MT 9, ¶ 50, 335 Mont. 233, 150 P.3d 930. Indeed, such a requirement would be an indefensible reversal of the progression in our caselaw over the last three decades and take us back to the dark ages of privity.
¶79 Also as support for its approach, the Court points out that Glacier’s complaint included allegations that Eide supplied false information in the audit reports of IMC. Opinion, ¶ 26. This is true, but these allegations were included to establish the element of breach (i.e., how Eide had breached the standard of care) in Glacier’s professional negligence claim. Likewise, the Court points out that Glacier alleged justifiable reliance on the audit reports, Opinion, ¶ 26, but these allegations were included to establish the element of causation (i.e., how Eide’s breach of duty had caused Glacier’s damages) in Glacier’s professional negligence claim. Glacier was not attempting to frame a negligent misrepresentation claim, and the references to Eide’s supplying of false information and Glacier’s reliance on the audit reports do not give this Court license to morph Glacier’s claim into something Glacier never intended-especially since *56 Glacier had no notice that this Court would take Glacier’s pleadings and affidavits, which were prepared and filed in support of a well-established four-element cause of action, and evaluate their sufficiency within the context of a newly articulated five-element cause of action.[1] This sort of bait-and-switch tactic by the Court is unfair in the extreme.
¶80 Finally, the Court observes that we have “treated professional negligence claims according to § 552 standards when the third party essentially alleges reliance on misrepresentations of information.” Opinion, ¶ 27. Yet, that is not what the Court is doing here. It is not “treating” Glacier’s “professional negligence” claim according to § 552 standards. Indeed, the Court asserts unequivocally that Glacier has not presented a “professional negligence” claim. Opinion, ¶¶ 26, 30. Rather, what the Court is doing here is “remaking” Glacier’s “professional negligence” claim into a “§ 552 claim.” It is axiomatic that “treating” a claim according to certain standards is not the same as “remaking” that claim into an entirely different cause of action. My disagreement with the Court’s Opinion would be narrower if it were simply a question of which standard should be applied to Glacier’s “professional negligence” claim. As it is, however, my disagreement also includes the Court’s sua sponte transformation of that claim.
¶81 It is unfair to remake a plaintiffs cause of action into something it never was intended to be and then to deny the plaintiff relief for failing to adequately support this remade cause. Indeed, if the plaintiff itself had changed the theory of its claim on appeal from that advanced in the district court, this Court would refuse to consider the changed theory. In Stanton v. Wells Fargo Bank Mont., N.A., 2007 MT 22, 335 Mont. 384, 152 P.3d 115, for example, we observed:
Trail’s End argued in the District Court that Stanton had committed constructive fraud .... Trail’s End argues on appeal, however, that Stanton committed actual fraud. The general rule in Montana is that we will not address either an issue raised for the first time on appeal or a party’s change in legal theory. We decline to address this issue. *57 Stanton, ¶ 35 (citation omitted).[2] If on appeal a party may not change its legal theory from constructive fraud to actual fraud, certainly this Court may not sua sponte change a party’s legal theory from professional negligence to negligent misrepresentation.
¶82 To summarize, then, “[a] professional negligence claim asserts that the accountant negligently performed its professional services.” Opinion, ¶ 22. Here, Glacier asserts that Eide “had a duty to perform its professional obligations with the degree of learning, skill and judgment ordinarily possessed by members of the accounting profession,” that Eide “failed to satisfy the standard of care imposed on public accounting firms,” that Eide thus “breached the applicable standard of care,” and that “such breach constitutes negligence.” This is a professional negligence claim under the Court’s own definition, and the Court’s refusal to recognize it as such undermines Glacier’s pleadings and the manner in which Glacier has developed its case against Eide. The fact is that Glacier is pursuing a professional negligence claim against an accounting firm, and the question presented-which the Court does not answer (Opinion, ¶ 30)-is what standard should be applied for determining whether a duty exists between the accountant and the plaintiff.
¶83 Turning to this question, we summarized the rules with respect to duty in Fisher v. Swift Transp. Co., 2008 MT 105, 342 Mont. 335, 181 P.3d 601: “[T]he existence of a duty turns primarily on foreseeability.... We ask whether the defendant could have reasonably foreseen that his or her conduct could have resulted in an injury to the plaintiff. A plaintiff is a foreseeable plaintiff if she or he is within the foreseeable zone of risk created by the defendant’s negligent act.” Fisher, ¶ 21 (internal quotation marks and citations omitted). While this “foreseeable plaintiff’ standard would seem applicable as a general rule, see § 27-1-701, MCA, our caselaw contains other standards for determining the scope of a professional’s duty to a third party (nonclient) in a professional negligence action. These other standards reflect the somewhat cautious progression nationwide away from the “privity” approach toward the “foreseeable plaintiff’ approach. I review the standards below but first note the “privity of contract” defense.
¶84 “Privity of contract” refers to “[t]he relationship between the parties to a contract, allowing them to sue each other but preventing *58 a third party from doing so.” Black’s Law Dictionary 1320 (Bryan A. Gamer ed., 9th ed., Thomson Reuters 2009). We have held that privity is not required to maintain an action grounded in negligence:
This Court was a pioneer in abolishing privity as a requirement for recovery in a personal injury or wrongful death case. Brandenburger v. Toyota (1973), 162 Mont. 506, 513 P.2d 268. We have not felt permanently bound to archaic legal concepts no matter how deeply rooted they may be. We view privity to be a concept having proper application in the area of contract law. There seems to be no sound public policy argument for extending its application to tort.
Hawthorne v. Kober Const. Co., 196 Mont. 519, 523, 640 P.2d 467, 469 (1982).
¶85 Consistent with Hawthorne, we have rejected the privity of contract defense in a variety of contexts. See e.g. Tynes v. Bankers Life Co., 224 Mont. 350, 359-60, 730 P.2d 1115, 1121 (1986) (insurer liable in tort to insured’s father, notwithstanding the absence of privity); Thayer v. Hicks, 243 Mont. 138, 149, 793 P.2d 784, 791 (1990) (accountant liable to third parties who he knows intend to rely upon his work product); Jim’s Excavating Service v. HKM Assocs., 265 Mont. 494, 502-06, 878 P.2d 248, 252-55 (1994) (project engineer or architect liable to third parties who foreseeably may rely on the information supplied by the engineer or architect); Turner v. Kerin & Assocs., 283 Mont. 117, 125-26, 938 P.2d 1368, 1373-74 (1997) (engineering firm liable to any party who holds or succeeds to a security interest in the property serviced by the firm); Watkins Trust v. Lacosta, 2004 MT 144, ¶¶ 21-22, 321 Mont. 432, 92 P.3d 620 (drafting attorney owes duty to nonclient beneficiaries named in the drafted instrument).
¶86 Furthermore, this Court more recently explained that
Hawthorne, Tynes, Thayer, Jim’s Excavating, Turner, and Rhode [u Adams, 1998 MT 73, 288 Mont. 278, 957 P.2d 1124,] reflected the demise of the “privity of contract” requirement historically imposed upon a plaintiff seeking to hold a defendant liable for professional malpractice. Indeed, we indicated in Jim’s Excavating that this requirement had been “abolish[ed].” See Jim’s Excavating, 265 Mont, at 502, 878 P.2d at 253 (referring to “the established law in Montana abolishing the requirement of privity of contract to maintain an action in tort”). However, none of these cases abolished the requirement that a plaintiff in a professional malpractice action first prove that the defendant owed her a duty of care .... In other words, the mere absence of a privity requirement does not render a professional liable for the *59 negligent performance of a contract to any and all third parties. To the contrary, in recognizing tort liability in the absence of privity, we have concomitantly limited the class of plaintiffs to identifiable third parties (typically, those who are known or are reasonably foreseeable by the professional, see Thayer, 243 Mont, at 149, 793 P.2d at 791; Jim’s Excavating, 265 Mont, at 506, 878 P.2d at 255).
Redies v. ALPS, 2007 MT 9, ¶ 50, 335 Mont. 233, 150 P.3d 930.
¶87 The question, then, “is not whether [the professional] owes a duty of care to third parties but, rather, just how far the duty extends.” Thayer, 243 Mont. at 144, 793 P.2d at 788. In this regard, we have recognized the following possible approaches.
¶88 1. Prosser’s Standard. In Prosser, The Law of Torts § 93, at 622, 623 (4th ed., West 1971), Professor Prosser states:
[B]y entering into a contract with A, the defendant may place himself in such a relation toward B that the law will impose upon him an obligation, sounding in tort and not in contract, to act in such a way that B will not be injured. The incidental fact of the existence of the contract with A does not negative the responsibility of the actor when he enters upon a course of affirmative conduct which may be expected to affect the interests of another person. [Emphasis added.]
... [T]here are situations in which the making of the contract creates a relation between the defendant and the promisee, which is sufficient to impose a tort duty of reasonable care. By the same token, there are situations in which the making of a contract with A may create a relation between the defendant and B, which will create a similar duty toward B, and may result in liability for failure to act.
¶89 We adopted this standard in Hawthorne, 196 Mont. at 523-24, 640 P.2d at 470, and held that a subcontractor may assert negligence claims against the general contractor’s steel supplier. We observed that “by entering into a contract with [the general contractor], [the steel supplier] has placed itself in such a relation toward [the subcontractor], that the law will impose upon [the steel supplier] an obligation, sounding in tort, to act in such a way that [the subcontractor] will not be injured.” Id. at 524, 640 P.2d at 470. We have since applied Prosser’s standard in subsequent cases. See e.g. Tynes, 224 Mont, at 359-60, 730 P.2d at 1121; Jim’s Excavating, 265 Mont. at 502, 506, 878 P.2d at 253, 255; Turner, 283 Mont. at 125-26, 938 P.2d at 1373-74.
*60 ¶90 2. The Thayer Standards. Meanwhile, in Thayer, we addressed the issue of “[t]o what extent does an accountant owe a duty of care to third parties with whom he is not in privity?” 243 Mont. at 144, 793 P.2d at 788. At the outset, we observed:
While some jurisdictions adhere to the rule that an accountant may not be held liable in negligence to parties with whom he is not in privity of contract, the modern trend allows recovery to non-clients in certain instances. The question most courts grapple with today is not whether an accountant owes a duty of care to third parties but, rather, just how far the duty extends. In dealing with this issue, courts have employed three different approaches. The first approach limits the duty of care to those third parties who are actually known to the accountant, the second limits the duty to those who are actually foreseen and the third expands the duty to all those who are reasonably foreseeable.
Id. (emphases added, citations omitted). We then explained these three approaches.
¶91 2a. Near Privity (“actually known”). In Ultramares Corp. v. Touche, 174 N.E. 441 (N.Y. 1931), the court limited an accountant’s duty of care to those in privity of contract with the accountant or those whose bond was so close as to approach that of privity. In Credit Alliance Corp. v. Arthur Andersen & Co., 483 N.E.2d 110, 115 (N.Y. 1985), the court held that “a relationship ‘so close as to approach that of privity’ [Ultramares] remains valid as the predicate for imposing liability upon accountants to noncontractual parties for the negligent preparation of financial reports.” The Credit Alliance court delineated three factors to guide courts in determining whether this “near privity” bond exists: (1) the accountants must have been aware that the financial reports were to be used for a particular purpose or purposes; (2) in the furtherance of which a known party or parties was intended to rely; and (3) there must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the accountants’ understanding of that party or parties’ reliance. Id. at 118; see also Thayer, 243 Mont. at 144-45, 793 P.2d at 788.
¶92 2b. Restatement (Second) of Torts § 552 (1977) (“actually foreseen”). The Restatement expands the “known third party” rule of Credit Alliance. It provides:
(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for *61 pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.
Unlike the “near privity” approach, § 552 does not require the accountant to actually know the identity of the specific third party and the particular transaction before liability will lie. Section 552 requires only that the accountant intend or foresee that members of a limited class will rely on his representations in determining whether to enter into a transaction with the audited entity, and the transaction the parties enter into must be of a type actually foreseen by the accountant. See Thayer, 243 Mont. at 146, 793 P.2d at 789.
¶93 2c. Ordinary Negligence Rules (“reasonably foreseeable”). Some jurisdictions have extended an accountant’s duty to third parties beyond the “actually foreseen” class of § 552. These jurisdictions apply ordinary negligence rules when dealing with the question of the scope of liability, holding that an accountant owes a duty to all who might reasonably and foreseeably obtain and rely upon the accountant’s work product. See Thayer, 243 Mont. at 146, 793 P.2d at 789 (citing cases); see also Jim’s Excavating, 265 Mont. at 516-17, 878 P.2d at 261 (Trieweiler, J., specially concurring).
¶94 2d. Thayer’s Ultimate Approach. After discussing these three approaches, we observed that “[i]n the present case, as in Credit Alliance, the accountant actually knew that a specific third party would obtain and rely upon the audit in question.” Thayer, 243 Mont, at 147,793 P.2d at 790. Thus, because the facts met the strictest of the three formulations of an accountant’s duty of care to nonclients (i.e., the “near privity” standard), we saw “no need to adopt a more liberal standard at this time.” Id. at 146, 793 P.2d at 789. We instead applied “a modified version of the Credit Alliance rule.” Id. Specifically, we held that an accountant may owe a duty of care to third parties “only *62 if the accountant actually knows that a specific third party intends to rely upon his work product and only if the reliance is in connection with a particular transaction or transactions of which the accountant is aware when he prepares the work product.” Id. at 149, 793 P.2d at 791. Accordingly, we adopted in Thayer the strictest approach that was necessary to resolve the case, but we did not preclude the possibility that a broader standard could apply under a different set of facts.
¶95 3. The Modified § 552 Standard. In Jim’s Excavating, the plaintiff (JES), a construction contractor, filed suit against the defendant (HKM), an engineering firm, over the negligent preparation of plans and specifications relating to a water transmission pipeline. In defense, HKM first argued that JES’s negligence claim failed because HKM had been retained by a different entity and, thus, there was no contractual privity between JES and HKM. We rejected this •argument outright, noting that the requirement of privity to maintain an action in tort had been “abolish[ed].” Jim’s Excavating, 265 Mont, at 502,878 P.2d at 253. HKM then relied on Thayer (as Eide does here) for the proposition that there has to be some sort of connection or “quasi-privity” before tort liability can be imposed on a professional. We acknowledged that the facts before us did not meet the test adopted in Thayer because HKM’s negligent act occurred before HKM “actually knew” that JES, specifically, would be relying on the negligently prepared plans and specifications. But we concluded that “HKM should not escape from liability simply because it did not actually know JES would receive the bid, when it knew that some contractor would be relying on its plans and specifications.” Id. at 504, 878 P.2d at 254.
¶96 To that end, we applied Restatement (Second) of Torts § 552-which this Court had adopted 11 years earlier in State Bank of Townsend v. Maryann’s, Inc., 204 Mont. 21, 33-35, 664 P.2d 295, 301-02 (1983)-though we modified the § 552 test in a significant way. As noted, § 552 limits liability to only those persons who the accountant intended or actually foresaw would rely on his representations ina foreseen transaction. We held in Jim’s Excavating, however, that a third-party contractor may recover from a project engineer or architect when the design professional “knew or should have foreseen that the particular plaintiff or an identifiable class of plaintiffs were at risk in relying on the information supplied.” 265 Mont. at 506, 878 P.2d at 255 (emphases added). The critical question is whether the plaintiff is someone who the professional knew or should have foreseen was at risk in relying on the information or services provided.
*63 ¶97 4. Prosser’s Standard and the Modified § 552 Standard Combined. Three years later, in Turner, the district court held that the plaintiff (Turner) could not state a claim under the modified § 552 standard because he could not prove that the engineering firm (Kerin) “should have foreseen that the particular plaintiff, or an identifiable class of plaintiffs were at risk in relying on the information supplied.” See Turner, 283 Mont. at 125, 938 P.2d at 1374. We disagreed. After quoting both Prosser’s Standard and our holding in Jim’s Excavating, we reasoned:
In the present case, by contracting with the owners to perform engineering work on the property, Kerin placed itself in a relation toward any party who held a security interest in the property that the law imposed upon him an obligation, sounding in tort and not in contract, to act in such a way that the security interest would not be injured [Prosser’s Standard]. Kerin knew or should have foreseen that if, contrary to his representations, he relaid with pipe not meeting requisite pipe standards, he would diminish the value of the property and thereby impair the value of the property as security [the modified § 552 standard]. It was foreseeable that failure to lay the proper pipe would damage an identifiable class of plaintiffs', i.e. those who held an interest in the property, both mortgagors and mortgagees [the modified § 552 standard]. The fact that Kerin could not specifically foresee Turner’s entry into the picture does not change the fact that Turner is a member of an identifiable class of plaintiffs, that is, he is a mortgagee by virtue of having purchased mortgages which were in existence at the time of Kerin’s work and which, allegedly, have not been satisfied.
Id. at 126, 938 P.2d at 1374 (emphases added).
¶98 Summary. The question, again, “is not whether [the professional] owes a duty of care to third parties but, rather, just how far the duty extends.” Thayer, 243 Mont. at 144, 793 P.2d at 788. As Glacier points out, and as our post -Thayer decisions confirm, we have already expanded this duty beyond the “near privity” standard we applied in Thayer. Since then, we have applied a modified, broader version of § 552 and have also applied the Prosser Standard. The progression in our caselaw, with regard to a professional’s duty of care to noncontractual third parties, has clearly been toward extending that duty to include those who the professional knew or should have foreseen were at risk in relying on the information or services provided. All that is left to do is to make that holding explicit with respect to *64 accountants-something we did not do in Thayer only because we did not have to on the facts presented there.
¶99 Returning to Glacier’s claim, it is important to reiterate that Glacier is not advocating for the application of § 552, and Glacier is certainly not pursuing a so-called “§ 552 claim.” Rather, Glacier is pursuing a professional negligence claim and is arguing for the “reasonably foreseeable plaintiff’ standard or, at a minimum, the “knew or should have foreseen” version of § 552 that we adopted in Jim’s Excavating. In my view, Glacier’s argument is well-taken because the unmodified version of § 552 (the “intended or actually foreseen” test) is an unduly restrictive standard to the extent it precludes Glacier’s claim against Eide in this case. I would apply the standard that we applied to engineers and architects and hold that an accountant owes a duty of care to a person or entity who the accountant “knew or should have foreseen” was at risk in relying on the information supplied. Jim’s Excavating, 265 Mont, at 506, 878 P.2d at 255.
¶100 Here, Eide held itself out as a Top 25 accounting firm in the nation, in business since 1917. It provided audits of IMC’s financial statements and issued “unqualified opinions” regarding those financial statements. Eide purportedly did so in accordance with generally accepted accounting principles-although Glacier’s expert (Larry Barton), a certified public accountant, reviewed the audit work papers produced by Eide from 2001 through 2006 and concluded (as stated in his affidavit) that Eide had breached the professional standards applicable to CPAs. Eide knew that these audits were required by FCB for purposes of determining whether and how much credit should be extended to IMC. Eide knew or should have foreseen that a prospective purchaser of FCB or FCB’s holding company (CDC) would review and rely on the IMC audits as part of its due diligence. In this regard, Barton stated that a Top 25 CPA firm like Eide “would have information and reason to know” that the financial institutions with which IMC did business, including their holding companies, are often bought and sold. Moreover, Eide “would have reason to know or expect,” and in fact “knew or should have known,” that a company (such as Glacier), which was considering acquiring those financial institutions with which IMC did business, “would likely review and rely upon documents maintained in the files of those financial institutions, particularly the audited financial statements of the companies, like IMC, with which such financial institutions have ongoing, multi-million dollar lending relationships.” Indeed, Eide actually did know when it issued the June 2006 report that Glacier *65 had agreed to acquire CDC and, thus, would be relying on the IMC audits-a fact the Court chooses to ignore.[3] As we stated in Jim’s Excavating, a third party may recover in tort from a project engineer or architect who “knew or should have foreseen that the particular plaintiff or an identifiable class of plaintiffs were at risk in relying on the information supplied.” 265 Mont. at 506, 878 P.2d at 255. While Eide seeks a special exemption from this standard, Eide has provided no compelling reason why the duty applicable to other professionals should not also apply to accountants.
¶101 The Court engages in some shoveling of smoke and a little sleight of hand, asserting that Jim’s Excavating “adopted and applied the principles of [§ 552]” and that the Court’s analysis herein “follows the analysis adopted in Jim’s Excavating.” Opinion, ¶ 45.1 authored the Jim’s Excavating opinion, however, and can state with certainty that the Court’s analysis in the present case is not at all faithful to the analysis in Jim’s Excavating. For one thing, we did not remake JES’s four-element professional negligence claim into a five-element negligent misrepresentation claim, as the Court does to Glacier here. See Jim’s Excavating, 265 Mont. at 500-01, 878 P.2d at 251-52 (describing JES’s professional negligence claim). Furthermore, contrary to the Court’s revisionist history, we did not apply § 552’s “intended or actually foreseen” standard which the Court imposes on Glacier today. Rather, we held that a professional’s duty of care extends to those who the professional “knew or should have foreseen” were at risk in relying on the information supplied. Id. at 506, 878 P.2d at 255.[4] Obviously, a duty of care limited to what the professional “intended” or “actually foresaw” is much narrower than a duty of care that includes what the professional “knew” or “should have foreseen.”
¶102 Nevertheless, in quoting from this part of the Jim’s Excavating opinion, the Court emphasizes the words “the particular plaintiff or an identifiable class of plaintiffs” and then asserts that it has “turned to *66 principles set forth in § 552” in order to define this class of plaintiffs. Opinion, ¶ 45. What the Court fails to acknowledge, however, is that we already defined the class in Jim’s Excavating. As stated, it consists of those persons who the professional knew or should have foreseen were at risk in relying on the information supplied. 265 Mont. at 506, 878 P.2d at 255. Of course, what the professional knew or should have foreseen will depend on the surrounding circumstances. But in the present case, Glacier has come forward with evidence, sufficient in my view to withstand summary judgment against it, that Eide should have foreseen that a prospective purchaser of FCB would review and rely on the pre-2006 IMC audits as part of its due diligence, and that Eide did know that Glacier would review and rely on the 2006 IMC audit.
¶103 The Court resorts to subtle scare tactics-employing terms such as “unforeseen liability exposure” and “an infinitely large class” of plaintiffs-in rejecting Barton’s affidavit. Opinion, ¶¶ 34, 38.1 am not persuaded, however, that the “knew or should have foreseen” standard would lead to the “unforeseen” and “infinitely large” liability exposure feared by the Court. We have applied this standard to engineers and architects, and those industries have in no way collapsed as a result.
¶104 I also am not persuaded by the Court’s assertion that “Glacier’s reliance on the audit reports in its merger transaction constitutes a use different than the use for which Eide had supplied the information.” Opinion, ¶ 43. This is absurd. The obvious “use” of the audit reports by all involved was to obtain an accurate assessment of IMC’s ability to pay back its loans from FCB..Certainly, a prospective buyer of FCB would review the reports for that very purpose.
¶105 Finally, it is contrary to public policy to hold that the purchaser of FCB cannot maintain an action in tort against Eide for the negligent preparation of the IMC audit reports. As Glacier points out, an independent auditor serves not only the client, but also the foreseeable users of its work product. Cf. United States v. Arthur Young & Co., 465 U.S. 805, 817-18, 104 S. Ct. 1495, 1503 (1984). Indeed, the practice of public accounting is defined as “performing ... for a client ... one or more types of services involving the use of accounting or auditing skills,” including “the issuance of reports or financial statements on which the public may rely.” Section 37-50-101(10)(a), MCA (emphasis added). Moreover, an accountant “who, because of negligence, ... issues or permits the issuance of any false statement of the financial transactions, standing, or condition of any firm or individual business undertaking is guilty of a misdemeanor ....” Section 37-50-401, MCA (emphasis added). Montana’s public policy *67 is reflected in these statutory provisions, see First Bank (N. A.) -Billings v. Transamerica Ins. Co., 209 Mont. 93, 96, 679 P.2d 1217, 1219 (1984), and these policy considerations call for application of the “knew or should have foreseen” standard. An accountant who is negligent in the preparation of reports on the financial condition of a firm should not be permitted to hide behind the defense that “I did not intend, nor did I foresee, that a future prospective buyer of that firm would look at and rely on the reports I negligently prepared concerning the firm’s financial standing.” Such an assertion-which Eide shamelessly employs in the present case-is preposterous and defeats the intent of Montana’s statutes governing accountants. Eide failed to discover and disclose that Hakala was cooking IMC’s books to the tune of $7.2 million, but Eide nevertheless issued “unqualified opinions” regarding IMC’s financial statements. Eide’s defense to Glacier’s legitimate reliance on the IMC audits smacks of Arthur Andersen’s when Enron folded.
¶106 In short, § 552’s “intended or actually foreseen” standard limits an accountant’s liability too narrowly. The better standard, which is consistent with the public policy of this state, is the one that we have already adopted and applied to other professionals: the “knew or should have foreseen” standard. I would hold that the District Court erred in applying the outmoded “near privity” standard and that Glacier is entitled to a trial on its professional negligence claim under the “knew or should have foreseen” standard.
Issue 3
¶107 Turning now to Issue 3,1 agree with the Court that the District Court erred in dismissing Western’s fraudulent misrepresentation claim. Opinion, ¶¶ 56-62. I disagree, however, with the Court’s conflation of Western’s professional negligence claim into its negligent misrepresentation claim. Opinion, ¶ 64. As the Court acknowledges at the outset, Western’s amended complaint contains both a “professional negligence” claim and a “negligent misrepresentation” claim, which are set out as two separate counts. See Opinion, ¶ 56. It is unfair and unacceptable for the Court to conflate these two counts into one “§ 552 claim.”
¶108 The case proceeded to trial on Western’s professional negligence claim, and the court erroneously instructed the jury based on the obsolete “near privity” standard applied in Thayer. Western presents a persuasive argument that this error was not harmless. Thus, I would reverse and remand for a new trial on this claim.
¶109 In addition, the Court explains in ¶¶ 21-24 that a negligent *68 misrepresentation claim is distinct from a professional negligence claim. It follows, therefore, that the District Court erred in dismissing Western’s negligent misrepresentation claim on the ground that it simply “duplicated” Western’s professional negligence claim. See Opinion, ¶ 63.1 therefore agree with the Court’s decision to remand for a new trial on the negligent misrepresentation claim. Opinion, ¶ 67.
Conclusion
¶110 Rather than clarify the scope of a professional’s liability to noncontractual third parties, the Court only muddles our jurisprudence in this area even further. With today’s decision, there are at least eight standards recognized in our caselaw:
1. the “near privity’ test (Thayer, citing Credit Alliance)
2. the “modified version of the Credit Alliance rule” test (Thayer)
3. the § 552 “intended or actually foreseen” test (Thayer and todays decision)
4. the modified § 552 “knew or should have foreseen” test (Jim’s Excavating)
5. Prosser’s “expected to affect the interests of another person” test (Hawthorne and Tynes; also discussed in Jim’s Excavating)
6. the combined Prosser and modified § 552 test (Turner)
7. the Trask multi-factor balancing test (Rhode and Redies[5])
8. the “reasonably foreseeable plaintiff’ test (§ 27-1-701, MCA, and ordinary negligence rules)
How a litigant is to know which of these standards applies in a given case we are not told. Nor are we told why accountants presently enjoy greater protection for their negligent acts and omissions which injure third parties than do engineers (Jim’s Excavating and Turner), insurers {Tynes), and attorneys {Watkins Trust and Redies). What is clear, however, is that this Court has no qualms about remaking a plaintiffs cause of action into whatever claim this Court wants it to be and then applying whichever standard the Court believes suits the occasion.
¶111 I therefore dissent from the Court’s decision as to Issue 1. Glacier alleged a professional negligence claim, not a negligent misrepresentation claim. In determining the issue of duty, I would apply the “knew or should have foreseen” standard that we apply to *69 engineers and architects. Doing so, I conclude that prospective purchasers of FCB (such as Glacier) are an identifiable class of plaintiffs which Eide knew or should have foreseen were at risk in relying on Eide’s “unqualified opinions” regarding IMC’s financial statements. Accordingly, I would hold that the District Court erred in granting summary judgment to Eide and that Glacier should be allowed to proceed to trial on its professional negligence claim.
¶112 As to Issue 2,1 concur in the Court’s resolution of this issue.
¶113 Lastly, as to Issue 3,1 concur in the Court’s decision to reverse the District Court’s dismissal of Western’s fraudulent misrepresentation claim. I also concur in the Court’s decision to remand for a trial on Western’s negligent misrepresentation claim. But I dissent from the Court’s conflation of Western’s professional negligence and negligent misrepresentation claims. Western alleged these as separate counts; and because the District Court rendered erroneous jury instructions on the professional negligence claim, I would reverse and remand for a retrial on this claim.
¶114 In closing, plaintiffs should be aware that, henceforth, when they assert a professional negligence claim in district court, on appeal this Court may sua sponte morph that claim into a negligent misrepresentation claim. Accordingly, plaintiffs should plead and argue their cases with enough flexibility to cover whatever action this Court happens to land on. Glacier’s complaint, a copy of which is included below, shows the sort of pleading that may result in the remaking of a professional negligence claim into a negligent misrepresentation claim by this Court.
¶115 I concur and dissent.
*70 Appendix (Pages 1 to 7 of Glacier’s Complaint)
[[Image here]]
*71 [[Image here]]
*72 [[Image here]]
*73 [[Image here]]
*74 [[Image here]]
*75 [[Image here]]
*76 [[Image here]]

 The Court cites Batten v. Watts Cycle & Marine, Inc., 240 Mont. 113, 117, 783 P.2d 378, 381 (1989), and Weigand v. Mont. Land & Real Estate Inv., 223 Mont. 137, 139, 724 P.2d 194, 196 (1986), as authority for a negligent misrepresentation claim. See Opinion, ¶ 66. Yet, neither of these cases articulates the five-element “§ 552 claim” created by the Court today.

 This rule is so often invoked by every member of this Court that it would be silly to provide pages of string-cites for the principle-which, in this case, we ignore.

 John Jacobsen (an Eide CPA) admits in his affidavit that Glacier’s purchase was announced in April 2006. But he then attempts to hide behind the fact that “[a]t that time, Eide Bailly was merely the auditor of IMC”-a defense premised entirely on privity of contract which, as explained above, this Court has consistently rejected since the early 1970s.

 Specifically, we stated: “Thus, we hold that a third party contractor may successfully recover for purely economic loss against a project engineer or architect when the design professional knew or should have foreseen that the particular plaintiff or an identifiable class of plaintiffs were at risk in relying on the information supplied.”

 See Rhode v. Adams, 1998 MT 73, ¶ 17, 288 Mont. 278, 957 P.2d 1124; Redies v. ALPS, 2007 MT 9, ¶¶ 44, 50, 335 Mont. 233, 150 P.3d 930. The Trask test addresses whether an attorney owes a duty of care to nonclients.